(Decided 3rd February, 1888.)

---

AUGUSTUS J. ALBERT, JR., JACOB ALBERT, and FRANK ALBERT, Executors and Trustees, and others *vs.* ANNA R. ALBERT, and others.

*Construction of Will—Devise—Equitable Life estate—Remainder—Execution of Power of Appointment—Word "heirs"—Executors and Administrators—Validity of Appointment under Power given by Will—Rule against Perpetuities—Void trusts—Election—Delegation of Power of Appointment—Bequests to a Class—Bequests to Individuals.*

J. A. by the third clause of his will gave certain real and personal property to trustees upon the following trusts: "In special trust and confidence nevertheless, for the use and benefit of my son A. J. during the term of his natural life, to the end and intent that he during that period be permitted and suffered to have, use, occupy, possess, and enjoy the same, and the rents, issues, profits, dividends and income, arising therefrom to take, receive, and apply to his own use and benefit. And from and immediately after the decease of my said son A. J. then in trust that the same shall descend, and I do hereby devise and bequeath the same to all and every lawful child or children the said A. J. has or may have hereafter, their heirs, executors, administrators and assigns to be equally divided between them, share and share alike." By the tenth clause the testator authorized and empowered his five children, including A. J. as follows: "Should either or any of them who may arrive at lawful age and have legal descendants, deem it expedient to avail them-

selves of the power hereby granted, they or either or any of them may, by their last will and testament, devise and bequeath to their legal heirs, executors, and administrators, either in trust or absolutely, the property, real and personal, left in trust for their use and benefit, as in their discretion and judgment, they or either of them, may deem proper and right in the division and distribution of the said property real and personal. And in the event of my aforesaid named children or any one of them dying without making or executing a will or testament, then the said property, real and personal, devised to either or any of my aforesaid children shall descend to their legal heirs, executors, and administrators, under the restrictions and limitations aforesaid." A. J. attained the age of twenty-one years and died, leaving lawful descendants, and a will which by the first clause thereof he declared to be " executed with a view to affect and embrace all property, real and personal and mixed, of every kind and description whatsoever, which shall belong to me at the time of my death, and all that over which I have or shall have the power of testamentary disposition by virtue of my father J. A's will, of record," &c ; " or by any other paper instrument whatsoever." HELD :

1st. That A. J. under the will of his father had an equitable life estate in said property, with remainder to his children, subject to the right on the part of the said A. J. to appoint by his will the respective amounts or proportions of his children's shares of that remainder, and subject to his further right to subject that remainder to a trust for the benefit of all or any of his children.

2nd. That the word "heirs" in the tenth clause of said will meant children notwithstanding it was followed by the words "executors and administrators;" which when used in wills, are often held to mean quite another person than the one implied in their strict and literal acceptation.

By the will of A. J. he blended with his own property, that over which he had said power of disposition by will, and directed his executors to make eight equal shares of the whole; one of which he gave in trust for each of his two daughters for her life, and then to her descendants absolutely, discharged from the trust; one other share he gave in trust for his granddaughter Mrs. W., who was born after the death of J. A., for her life, and then to her descendants discharged from the trusts, one other share was given to each of his four sons, as to part thereof absolutely, and as to the remaining part in trust during his life and the life of his wife, and then to his descendants. The remaining share he directed to be divided into four equal parts,

one of which was given in trust for and during the life of his grand-daughter D. and one in trust for and during the life of his grand-daughter F. with remainder in each case to their children; and the remaining two fourths were given respectively to his grandsons J. and A. upon their attaining respectively the age of twenty-one years, with cross remainders among said four grandchildren, in case of any of them dying, the females without issue, and the males under age and without issue living at their death. HELD:

1st. That to test the validity of the appointments in the will of A. J. under the power given by the will of his father J. A., it was necessary to read the gifts made by his will, as if they had been written in and formed part of the will of his father, in the place of the power itself therein contained.

2nd. That as the two daughters of A. J. were living at the death of their grandfather J. A. the appointment of their shares of the settled property in trust during their lives, with remainder to their children, did not violate the rule against perpetuities, and was valid.

3rd. That although J. and A. the grandsons of A. J. were not born till after the death of J. A., yet as they must of necessity, if they live, attain their majority, (the time fixed for the indefeasible vesting of their shares) inside of the period of twenty-one years after the termination of the life estate of J. A. their estates were not within the rule.

4th. That in regard to the four living sons of A. J., (all of whom were living at the death of their grandfather J. A.) so far as the trusts extend for their respective lives, they would be valid, provided their respective wives were *in esse* at the death of J. A. but not otherwise.

5th. That as to the gifts in trust for A. J's granddaughters Mrs. W., D., and F., during their respective lives with remainders over, inasmuch as none of said granddaughters were alive during the life-time of J. A. those gifts were void.

6th. That the invalidity of these trusts did not affect the validity of the other trusts created by the will of A. J.

7th. That the trusts in favor of said three granddaughters, being invalid as to the property over which A. J. had merely the power of disposition, their respective shares of that property would vest in them absolutely.

8th. That as the property given in trust for his said granddaughters, by A. J. consisted of his own property as well as of that over which

he had said power of disposition, those as to whose shares the trusts were in part void, would be required to elect whether to take absolutely under the will of J. A. their proportion of the property affected by said power, and relinquish all claim to participate in the estate of A. J. or to abide by the will of the latter in its entirety.

9th.   That should the fact be that the wives of the sons of A. J. were not *in esse* at the death of J. A. these sons, or such of them as were so situated, would also be required to make a similar election.

10th.   That the power of appointment conferred upon A. J. by his father was properly exercised by him, and his leaving to his executors the division of the property, was not a delegation to them of the power of appointment.

Where bequests are made to a class, and some of the class are *in esse* and capable of taking without violating the rule against perpetuities, and some are not, the whole bequest must fail. But where the bequests have been made to individuals, some of whom are capable of taking and some are not, a different consequence follows.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, and McSHERRY, J.

*Richard S. Albert,* and *Arthur W. Machen,* for the appellants.

What was the nature and extent of the estate and testamentary power of Augustus J. Albert as to the trust property?   Undoubtedly, the third clause of Jacob Albert's will, taken by itself, would vest only an equitable life estate in Augustus J., but regard must be had also to the *tenth* clause; and if it be found that the two clauses are in conflict with one another, the one which is posterior in local situation must prevail, according to the well settled rule in the construction of wills.   1 *Jarman on Wills,* (*4th Ed.,*) 472, 475; *Iglehart vs. Kirwan,* 10 *Md.,* 564; *Manning vs. Thruston,* 59 *Md.,* 226; *Hollins vs. Coonan,* 9 *Gill,* 62.

Under the tenth clause, all and every one of the five children of the testator who should "arrive at lawful age and have legal descendants," were entitled to "devise and bequeath to their legal *heirs, executors and administrators* either in *trust* or *absolutely* the property, real and personal, left in trust for their use and benefit."

While it is a condition precedent to the possession of this power that Augustus James and the others shall respectively, have descendants, the persons in whose favor the power may be exercised are not children, but *heirs, executors and administrators.* If it be said that the word heirs may sometimes mean children, "executors and administrators" cannot be made to bear such signification. A right to bequeath to one's executors is a right to bequeath in any manner that a testator may direct his executors to dispose of his estate. The executors take as *his* executors, not as the appointees of another under a power. And when the word "heirs" is used in such connection the effect of the whole seems to be to give the absolute power of disposition. *Webb vs. Sadler, L. R.,* 8 *Chan.,* 419; *Nevin vs. Gillespie,* 56 *Md.,* 320, 327; *Holloway vs. Clarkson,* 2 *Hare,* 521; *Mackenzie vs. Mackenzie,* 3 *Macn. & Gord.,* 559; *Saberton vs. Skeels,* 1 *Russ. & My.,* 589; *Attorney-Gen. vs. Malkin,* 2 *Phill.,* 64.

The result then is, the tenth clause substantially vests the child of the testator, who attains the age of twenty-one years, and has children, with a fee simple estate in the realty and an absolute property in the personalty. This is not *inconsistent* with the previous limitation, although it superadds something to it. By the immediate operation of the will, and the effect of the third clause, an equitable life estate is given, which by the provision in the tenth clause is converted into a fee or absolute interest by the concurrence of the two conditions, attainment of the age of twenty-one years and having children. If a third condition be implied, that he shall make a will,

the result in the present case would be the same. The
conclusion that a fee was intended to be vested in the
children is confirmed by the *alternative* limitation :—"and
in the event of my aforesaid named children, or any one
of them, dying without making or executing a will or
testament, then the said property, real and personal,
devised to either or any of my aforesaid children shall
*descend* to *their legal heirs, executors and administra-
tors,* under the restrictions and limitations as aforesaid."
To take as *heirs* of the child, subject to the restrictions
and limitations of the previous clauses of the will, is in
effect taking a *fee* by inheritance from the parent, sub-
ject to provisions operating by way of executory devise or
conditional limitation, viz., dying under 21 and without
leaving issue. If the words "under the restrictions and
limitations as aforesaid" have not this signification, they
must be disregarded as insensible, in connection with the
immediately preceding limitation of a fee simple estate in
the realty and absolute estate in the personalty.

Upon the limitations in clause ten what was the nature
of the estate for life given to Augustus James Albert?
The property is devised in the first instance to trustees ;
but it is well settled that in the case of a simple devise to
trustees, where they are merely passive instruments, and
have no duty to perform, the legal estate passes to the
person entitled to the beneficial estate. Here the trustees
have *no* duty to perform ; and the *use* and *possession* are
expressly given to the beneficiary. Hence, while there
is a nominal trust, it is converted immediately into a legal
estate. *Tudor's Lead. Cas. on Real Prop., note to Tyrrell's
Case,* 292, 293 ; *Broughton vs. Langley,* 2 *Ld. Raym.,*
873 ; *Doe, dem. vs. Biggs,* 2 *Taunt.,* 109 ; *Right, dem.
Phillips vs. Smith,* 12 *East,* 455 ; *Doe, dem. Noble vs. Bol-
ton,* 11 *Add. & Ell.,* 188, 192 ; *Baker vs. White, L. R.,* 20
*Eq.,* 166 ; *Toller vs. Attwood,* 15 *Q. B.,* 929.

The legal estate is more easily executed in the equitable in the case of a will than in that of a deed.  *Cooper vs. Kynock, L. R.,* 7 *Chan.,* 398.

It cannot be doubted, if the legal estate was executed and vested in Augustus J. Albert during his life, that the succeeding devise to his heirs, executors and administrators was of a legal estate also.    Thus the legal limitations of Jacob Albert's will are, in effect, to Augustus J. Albert for life, (with a power of devising,) remainder to his heirs, executors and administrators.    Consequently, a clear case is presented for the application of the rule in *Shelley's Case. Tudor's Lead. Cas. on Real Prop.,* 520, *note to Shelley's Case ; Adams vs. Adams,* 6 *Q. B.,* 860 ; *Measure vs. Gee,* 5 *Barn. & Ald.,* 910; *Barker vs. Greenwood,* 4 *Mees. & W.,* 429 ; *Simpers' Lessee vs. Simpers,* 15  *Md.,* 160.

A distinction exists in the case of a trust for a *married woman,* which has been always recognized to be an exception to the general rule ; there, for the protection of the *cestui que trust,* the legal estate is maintained in the trustee.  *Griffith vs. Plummer,* 52 *Md.,* 74 ; *Doe vs. Biggs,* 2 *Taunt.,* 111.

There is a relation between the limitation to the ancestor for life and afterwards to his executors, in respect to the *personal* property, analogous to that recognized as to realty under the rule in *Shelley's Case,* and having the like result.    2 *Jarm. on Wills,* 334 ; *Horne vs. Lyeth,* 4 *H. & J.,* 438.

The fact of a power of appointment being given to the life tenant, makes, of course, no difference in the case. *Brown vs. Renshaw,* 57 *Md.,* 78.

So far as the power is well exercised it takes effect, and so far as it is not so exercised the property descends to the heirs-at-law of the donee.

The construction which makes both of the estates, namely, that of Augustus J. Albert and that limited to his heirs, *legal* estates, seems to be quite clear.    But it

seems also clear that if the life estate was equitable, the remainder, in the intention of the testator, was of the same character. In either case, the gift for life to the ancestor and the remainder to his heirs, are of the same nature. *Brown vs. Renshaw,* 57 *Md.,* 67; *Tillinghast vs. Coggeshall,* 7 *R. Is.,* 383; *Cushing vs. Blake,* 30 *N. Jer.,* 689, 697.

The principle of the doctrine of election is "that no one shall be permitted to take under an instrument and defeat its provisions." *McElfresh's Adm'rs vs. Schley,* 2 *Gill,* 202.

The doctrine of election is well established in Maryland. *McElfresh's Adm'rs vs. Schley,* 2 *Gill,* 181; *Barbour & Daingerfield vs. Mitchell,* 40 *Md.,* 151.

In those cases *Wilson vs. Townshend,* 2 *Ves. Jr.,* 693, was referred to with approval. See also *Whistler vs. Webster,* 2 *Ves. Jr.,* 367; *Sugden on Powers,* (8th Ed.,) 578; *Cooper vs. Cooper, L. R.,* 6 *Chan.,* 15; 7 *H. L. Cas.,* 53; *Ex parte Bernard,* 6 *Ir. Ch. R.,* 133; *Coutts vs. Acworth, L. R.,* 9 *Eq.,* 519; 1 *Jarman on Wills,* 443 *and* 449.

*Julian I. Alexander,* and *Robert Gilmor,* for the appellees.

In trust for A for life with power to appoint *in trust,* amongst *unborn children,* with executory devises or remainders after them, certainly would seem to include persons beyond the line. This is what is done, and it is claimed to be within the purview of the tenth clause of Jacob Albert's will. *Barnum vs. Barnum,* 26 *Md.,* 171-2-3; *Deford vs. Deford,* 36 *Md.,* 168; *Goldsborough vs. Martin,* 41 *Md.,* 488.

According to modern construction it is not sufficient that an estate may vest within the period, but the rule is that it must vest. 1 *Jarman on Wills,* 248; 2 *Redfield on Wills,* 845–6, (1st Ed.); *Schouler on Wills,* sec. 21; *Schouler's Personal Property,* secs. 146, 147, and cases in notes; 48 *Conn.,* 293; 10 *Allen,* 1; *Seaman vs. Wood,* 22 *Beav.,* 591; *Gooch vs. Gooch,* 3 *DeG., M. & G.,* 366; *Cadell vs. Palmer,*

1 *Cl. & Fin.*, 372; *Gray on Perpetuities, sec.* 510, and notes; *Lewis on Perpetuities*, 478; *St. Amour vs. Rivard*, 2 *Mich.*, 294.

The power, when executed, is to be referred in all cases to the deed or will creating it. This rule requires it to be read in the instrument which is the foundation of the power, and the terms in which the power is couched, must answer to the test established by the rule.

This is not one of the class of cases in which difficulty has been felt from there being a gift to the persons of a class, some of whom cannot take, while others can. It would be enough, were it one of that description, to observe that if it could not be ascertained what was to be the share of each at the point of time when the estate should vest, the gift would be void as to all. *Leake vs. Robinson*, 2 *Mer.*, 363; *Greenwood vs. Roberts*, 15 *Beav.*, 92. The case of *Cattlin vs. Brown*, 11 *Hare*, 372–374, illustrates the difference between executory devises and contingent legal remainders.

The recognized rules respecting executory devises have been stated as follows:

1. An executory devise is bad unless it be clear at the death of the testator that it must of necessity vest in some one, if at all, within a life or lives in being, and twenty-one years afterwards.

2. You must ascertain the objects of the testator's bounty by construing his will without any rules which prohibit such limitations.

3. If the devise be to a single person answering a given description, at a time beyond the limits allowed by law, or to a series of single individuals answering a given description, and any one member of the series intended to take, may, by possibility, be a person excluded by the rule as to remoteness, then no person whatever can take because the testator has expressed his intention to include all and not to give to one, excluding others.

4. When the devise is to a class of persons answering a given description, and any member of that class may possibly have to be ascertained at a period exceeding the limits allowed by law, the same consequence follows as in the preceding rule, and for the same reason. See *Gee vs. Audley*, 1 *Cox*, 324; *Leake vs. Robinson*, 2 *Mer.*, 363; *Gooch vs. Gooch*, 14 *Beav.*, 565.

5. Where there is a gift or devise of a given sum of money or property to each member of a class, and the gift is wholly independent of the same or similar gift to every other member of the class, and cannot be augmented or diminished whatever the number of the other members, then the gift may be good as to those within the limits allowed by law. *Greenwoods vs. Roberts*, 15 *Beav.*, 92; *Leake vs. Robinson*, 2 *Mer.*, 363; 1 *Jarman on Wills*, 527. Mr. Jarman, speaking of repugnant expressions, with regard to the same thing in different parts of the will says: (1 *Eng. Ed.*, 872,) "It is in the determination of this previous question, namely, whether the gift to the primary legatee is absolute or qualified, that the real difficulty of these cases lies. The intention is, of course, to be collected from the whole will. But the point can only be material when the first expressions are ambiguous, for if there is distinct disposition or gift, *and the intention* is expressed, that which afterwards follows cannot affect the construction of the gift; but where the first is *capable of two constructions, other* parts of the will are to be looked at to see *what the intention was.*"

No such difficulty is here encountered. *Combs vs. Combs*, 67 *Md.*, 11, is the latest Maryland case on this subject. See *Ide vs. Ide*, 5 *Mass.*, 500; *Jackson vs. Sebring*, 16 *John.*, 520; *Kelley vs. Meins*, 135 *Mass.*, 231; *Howard vs. Carusi*, 119 *U. S.*, 725; 68 *Me.*, 34; 41 *Conn.*, 607; 47 *Iowa*, 607.

This doctrine of construction of repugnant parts of a will, of course does not interfere with that rule of contradictory

clauses, where the locally posterior provision must prevail. It stands on independent footing. The rule to cut down or out must be indicated with at least reasonable certainty. *Schouler on Wills*, 478; 1 *Jarman on Wills*, 479.

If the testator has improperly exercised a power supposed to be held, the property and estate appointed must go as in default of all appointment, and will be divisible amongst all entitled under the devise in the third clause of Jacob Albert's will. *Wollaston vs. King, L. R.,* 8 *Eq.*, 165, 174; *Langslow vs. Langslow, L. R.,* 9 *Eq.*, 554; *Jones vs. Jones,* 8 *Gill*, 197; *Ellison vs. Ellison,* 1 *White & Tudor's L. C. in Eq.,* 259, *et seq.;* *Bristow vs. Warde,* 2 *Ves. Jr.,* 350.

McSHERRY, J., delivered the opinion of the Court.

The will of Jacob Albert, bearing date the eleventh day of May, eighteen hundred and forty-six, was duly admitted to probate by the Orphans' Court of Baltimore City, on the ninth day of March, eighteen hundred and fifty-four. By it, after making provision for his wife, and after making a few minor bequests, the residuum of his estate was divided into five equal parts, and one of those parts was given to each of his children, subject to the conditions and limitations and upon the terms presently to be stated. After specifying in the third clause of his will certain portions of his property which he designed should constitute a part of the share of his son, Augustus James Albert, he devised and bequeathed by that clause as follows: " The aforesaid three parcels of property, at the valuation specified, with forty-six thousand eight hundred and fifty dollars in stock of the corporation of the City of Baltimore, stock of the Commonwealth of Virginia, and bonds of the Baltimore and Ohio Railroad Company, in proportion to the amount of each of said stocks held by me, and standing in my name, I give, devise and bequeath to my beloved wife, Eliza Margaret Albert, and my son, William

Julian, as trustees, the survivors or survivor of them, and the heirs, executors and administrators of such survivor, in special trust and confidence, nevertheless, for the use and benefit of my son, Augustus James, during the term of his natural life, to the end and intent that he, during that period, be permitted and suffered to have, use, occupy, possess and enjoy the same, and the rents, issues, profits, dividends and income arising therefrom, to take, receive and apply to his own use and benefit. And from and immediately after the decease of my said son, Augustus James, then in trust that the same shall descend, and I do hereby devise and bequeath the same to all and every lawful child or children the said Augustus James has, or may have hereafter, their heirs, executors, administrators and assigns, to be equally divided between them, share and share alike. And the balance of one-fifth part of the said rest, residue and remainder of my estate (after deducting therefrom the three parcels of property above devised, with forty-six thousand eight hundred and fifty dollars in stocks, in trust for my said son, Augustus James,) I give, devise and bequeath to my said son, Augustus J., his heirs, executors, administrators and assigns absolutely forever." The other four shares of the residuum were disposed of by other clauses for the benefit of his remaining children. In regard to the shares of his two daughters and one of his sons the trusts embrace the whole of their respective parts, and there is some difference in the language respecting the limitations over. Other clauses followed, some of which will be adverted to hereafter. The tenth clause, succeeding that already quoted and those alluded to, is in these words: "Item. And I do hereby authorize and empower my aforesaid five children, namely, Augustus James, William Julian, Jacob, Anna Margaret and Mary Schroder, should either or any of them who may arrive at lawful age, and have legal descendants, deem it expedient to avail themselves of the

power hereby granted, they or either or any of them, may, by their last will and testament, devise and bequeath to their legal heirs, executors and administrators, either in trust or absolutely, the property real and personal, left in trust for their use and benefit, as in their discretion and judgment they, or either of them, may deem proper and right in the division and distribution of the said property, real and personal. And in the event of my aforesaid named children, or any one of them, dying without making or executing a will or testament, then the said property, real and personal, devised to either or any of my aforesaid children, shall descend to their legal heirs, executors and administrators, under the restrictions and limitations aforesaid."

Augustus James Albert died on the tenth of September, eighteen hundred and eighty-six, and his will was admitted to probate by the Orphans' Court of Baltimore County later in the same month. The first clause of that will is as follows : "I, Augustus J. Albert, of Baltimore County, in the State of Maryland, do make this my last will and testament, which I do hereby declare to be executed with a view to affect and embrace all property, real, personal and mixed, of every kind and description whatsoever which shall belong to me at the time of my death, and all that over which I have or shall have the power of testamentary disposition by virtue of my father, Jacob Albert's will, of record in the office of the Register of Wills, of Baltimore City, in Liber R. H., No. 26, folio 101, &c., or by any other paper instrument whatsoever." The disposition made by him, under this will, of the settled property and of his own estate will be stated further on in this opinion.

The executors of Augustus J. Albert's will and some of the legatees filed a bill in the Circuit Court of Baltimore City, against others of the legatees and devisees, seeking a construction of the wills of Jacob and Augustus J.

Albert; and a *pro forma* decree was passed, adjudging the last will and testament of Augustus J. Albert inoperative and without effect as to all the property and estates, real and personal, comprising and forming that part of the estate of Jacob Albert, deceased, which by the third clause of Jacob Albert's will was devised and bequeathed, as hereinbefore set forth, to Augustus James for life; and further adjudging that the children of Augustus J. Albert are not put to election between the property they are entitled to take under the will of Jacob Albert and the benefits and gifts bestowed by the will of Augustus J. Albert.

From that decree this appeal has been taken, and we are consequently required to determine what effect the tenth clause in the will of Jacob Albert had upon the settled property embraced in the third clause; and whether the will of Augustus J. Albert is a valid execution of the power of appointment contained, as stated, in the will of his father.

In interpreting the language used in Jacob Albert's will, we must be governed, in a great measure, by general rules and principles of construction applicable alike to all similar instruments, rather than merely by adjudged cases seemingly analogous; because, as observed by Lord WENSLEYDALE, in *Grey vs. Peason*, 6 *H. L. C.*, 108, "when the decision is not upon some rule or principle of law, but upon the meaning of words in instruments which differ so much from each other, and when the proper construction is so varied by the peculiar circumstances of each case, it seldom happens that the words of one will are a sure guide for the construction of words resembling them in another."

The intention of the testator as gathered from the four corners of the instrument is to prevail, if there be apt words used to effectuate it, unless it contravene some positive principle of law or be frustrated by some unbend-

ing rule of construction assigning an inflexible meaning to particular words. In discovering that intention all parts of the will are to be construed in relation to each other, without regard to the order in which they occur, and so as, if possible, to form one consistent whole. Even where technical words are used, though the testator will be ordinarily presumed to have used them in their legal sense, a different meaning will be given to them when the context clearly indicates that such technical import would defeat his manifest intention. *Taylor vs. Watson*, 35 *Md.*, 519.

Now, it is perfectly obvious that the third clause of the will of Jacob Albert, standing alone, gave to his son, Augustus James, an equitable life estate in the three parcels of real estate and in the forty-six thousand eight hundred and fifty dollars of stocks mentioned therein; with remainder to the children of the said Augustus James absolutely ; and that it gave the residue of that one-fifth of the testator's estate to Augustus J., "his heirs, executors. administrators and assigns, absolutely forever." There is no controversy in regard to the latter part of this clause which relates to the absolute gift to Augustus J., and we have only to consider what effect the tenth clause has on the preceding part of the third clause and on the estate created thereby. By the tenth clause Jacob Albert authorized and empowered his five children if they arrived at lawful age and had "legal descendants" to "devise and bequeath" "to their legal heirs, executors and administrators either in trust or absolutely, the property, real and personal, left in trust for their use and benefit, as in their discretion and judgment" they might deem "proper and right in the division and distribution of the said property, real and personal;" and in the event of a failure to make such disposition "then the said property, real and personal, devised to either or any of my aforesaid children, shall descend *to their legal heirs, executors and administrators*," &c.

We think it manifest from an examination of the whole will that the predominant intention of the testator was to

create an equitable life estate for his son, Augustus J., in the particular property designated, with remainder to that son's children, and to give to Augustus J., under the tenth clause, power to designate by his last will and testament, whether that remainder thus given by the third clause, should vest in his children absolutely or be continued in trust for their benefit, and in what proportions it should so vest. The whole difficulty arises from the absence from the tenth clause of the word *children* before the words "their legal heirs," &c. But though that word is omitted, we think, by a fair construction, the words which are used convey the same meaning, unless the language employed enlarges the estate given by the third clause into a fee simple in Augustus J. Albert, as contended for by the appellants. The word *"heirs"* is used in Jacob Albert's will some thirty times with varying meanings. It is sometimes used as a word of limitation and frequently as synonymous with children. The will is inartificially drawn and it seems too plain for argument that the word has not been employed throughout the instrument strictly in its technical sense. In *Carne vs. Roch*, 4 *Moore & Pay.*, 862, "heir-at-law" was held, by force of the context, to mean eldest son. The word "heirs" is flexible and should be so construed as to give effect to the manifest intention of the testator. *Jones vs. Lloyd*, 33 *Ohio St.*, 572. It has been construed to mean *children*, 2 *Jar. on Wills*, 614, (5th *Am. Ed.*), *note* 15, and authorities there cited. This same construction has been applied to it in the case of a devise of real estate. *Milroy vs. Milroy*, 14 *Sim.*, 48; *Micklethwait vs. Micklethwait*, 4 *C. B. (N. S.)*, 790.

Now, in the will of Jacob Albert, in other clauses than the ones we are considering, the word "heirs" has been used as meaning children unmistakably. Thus, he says, "it is my will and desire that my real estate and personal property be divided among my *heirs*, as far as is practicable, without a sale," &c., "but in case it becomes necessary in

order to effect a division of the same," he directs a sale of that part "not herein before specifically devised or intended for any of my *heirs.*" In another clause he gives certain ground rents to one of his daughters during her natural life and after her death to her legal *heirs* of her body begotten. Again, in reference to his son, Jacob, he directs the trustees to invest that son's share "for the use and benefit of my said son, Jacob, *and his heirs,* during his natural life." It is apparent that in these clauses just alluded to the testator meant *children* when he said *heirs.* That he used the word *heirs* in the tenth clause of his will as meaning *children* is evident, not only from the circumstance that such a construction will give full force and effect to both clauses and thus prevent an irreconcilable repugnancy, but from a proper reading of the clause itself and the undoubted signification attached by him to that word elsewhere in the will, as already indicated. The power to make a testamentary appointment under this clause is a conditional one. The right to exercise it is made to depend upon two contingencies, viz., that the child undertaking to do so shall have arrived at lawful age, and shall "have legal descendants."

Those of his children who have no "legal descendants" are not entitled to make this appointment, and upon their death, the property given in trust for them by other clauses of the will, is directed to be equally divided between the testator's" surviving children or their descendants, their heirs, executors and administrators." But those of his children who do have "legal descendants"—who, therefore, do have children or the descendants of deceased children in whom, under the third clause, the remainder conditionally vested subject to be opened to let in after-born children, and subject likewise to be cut down to a mere life estate by a proper exercise of the power of appointment— were authorized by the tenth clause to make a testamentary disposition or appointment of the estate in re-

mainder by directing the proportions in which it should be divided amongst those children and by subjecting it or not to a trust for their benefit. It could scarcely have been the intention of the testator by the insertion of this clause to give to those of his children who should have "legal descendants," a fee simple estate in the trust property, by the use in this clause of the words "legal heirs, executors and administrators." This construction (which has been contended for,) would enable those of the testator's children who have "legal descendants" to strip those descendants by will or by conveyance of the very property which Jacob Albert seemed solicitous to make secure for their ultimate benefit; whilst those having no children and who, therefore, are not within the terms of the tenth clause, would be still restricted to a mere life estate, and wholly precluded from depriving their surviving brothers and sisters, and their descendants of the possession of the remainder limited over after the termination of the life estate.

Giving then to the word *heirs* in the tenth clause the meaning of children, which is fully sanctioned by the context, and which is in consonance with the authorities, the third and tenth clauses read together would, as far as the settled property is concerned, give to Augustus J. Albert an equitable life estate with remainder to his children, subject to the right on the part of the said Augustus J. to appoint by his will the respective amounts or proportions of his children's shares of that remainder, and subject to his further right to subject that remainder to a trust for the benefit of all or any of his children. This seems to us to have been the manifest intention of Jacob Albert. This intention can be given effect by the construction we are discussing, and that construction appears to be warranted, if not by cases which exactly quadrate with this, at least, by the general principles and settled rules alluded to.

We are not unmindful in reaching this conclusion that the word heirs is followed by the words *executors and administrators*, and that it is claimed that whilst the former may sometimes mean children, the latter words never can. But like the word *heirs*, the words *executors* and *administrators*, *legal representatives* and *personal representatives*, when used in wills, are often held to mean quite another person than the one implied in their strict and literal acceptation. "It is settled that if an inference can be drawn from a will that a testator used the words personal or legal representatives to designate individuals answering the description, though not in the strict legal sense of the terms, those persons will be entitled in preference to executors and administrators." 1 *Rop. on Leg.*, 128; *Wm's Ex.*, (*6th Am. Ed.*) 1217-1225. In *Horsepool vs. Watson*, 3 *Ves.*, 383, "representatives" was construed "issue." In *Atherton vs. Crowther*, 19 *Beav.*, 448, where there was a residuary bequest to the testator's wife for life, remainder to the children of A, living at A's death, "but if any of the said children should die in A's life-time, then to the *personal representatives* of such child or children to take *per stirpes* and not *per capita*," and in another clause there was a gift "in case there should be no such children nor any representatives of such children living at A's death, then to the persons who should be the testator's next of kin;" it was held by Sir J. ROMILLY, M. R., that the words personal representatives meant descendants. A devise to A and B, *or their legal representatives*, was construed to mean children taking by substitution. *Abbott vs. Jenkins*, 10 *Serg. & R.*, 296; *Stook's Appeal*, 20 *Pa. St.*, 349. It follows then that the manifest intention of the testator, as we read it, should not be defeated by applying to the words we have just been considering, a technical meaning, when it is quite apparent that they were not used in any such sense, and when they are regarded as flexible and as signifying, according to the context, a class

of persons similar to those included under and often designated by the less strict interpretation of the word heirs.

Having reached this conclusion with respect to the construction of the third and tenth clauses of the will of Jacob Albert, it becomes necessary to inquire whether the will of Augustus J. Albert is a valid execution of the power contained in the tenth clause of the will of his father.   This question is not free from difficulty.   The reference to the power is amply sufficient.   Augustus J. Albert blended the settled property with his own, and directed his executors to make eight equal shares of the whole.   One of these shares he gave to trustees for the life of his daughter Anna R., with remainder absolutely, discharged of the trust, to her children and the descendants of deceased children, *per stirpes.*   One other share he disposed of in like manner for the benefit of his other daughter, Mrs. Gilmor.   A third share he gave in the same manner to trustees for the benefit of his *granddaughter*, Mrs. Winchester, during her life, with remainder over, after her death, discharged of the trust, to her children, &c.   For each of his four sons he provided that of their one-eighth shares, twenty thousand dollars should be placed in trust during their respective lives *and the lives of their respective wives*, with remainders, as to these sums of twenty thousand dollars, over to their respective children, &c.; whilst the residue of each of said son's one-eighth share was given absolutely to the sons respectively.   The remaining one-eighth share was directed to be divided into four equal parts, one of which parts was given to trustees for and during the life of his *granddaughter*, Dora; another for and during the life of his *grand-daughter*, Fannie, with remainders in each case to their children, &c., as in the case of his grand-daughter, Mrs. Winchester.   The other two-fourths are given respectively to his *grandsons*, Joseph T. and Augustus J. Albert, upon their attaining respectively the age of twenty-one

years, with cross remainders among these four grand-
children in case of any of them dying, the females without
issue, and the males under age and without issue, living
at their death.

To test the validity of these appointments of this power
it is necessary to read these gifts made by the will of
Augustus J. Albert, as if they had been written in and
formed part of the will of Jacob Albert, in the place of
the power itself therein contained.    This brings us to the
consideration of the objection strenuously urged upon us,
that the attempted execution, of the power is void because
it tends to the creation of a perpetuity.    "If the trusts
require in their execution, a longer period than that pre-
scribed by the rule, viz., a life or lives in being at the
time of its commencement, and twenty-one years, and a
fraction of a year to cover the period of gestation, there-
after, and the property devised to the trustees is thereby
rendered inalienable for such longer period, the law de-
nounces the devise in trust as a perpetuity and declares
it void."    *Goldsborough vs. Martin,* 41 *Md.,* 501.    The
record discloses the fact that each of the six living chil-
dren of Augustus J. Albert—his two daughters and four
sons whom he names in his will, and for whom he makes
provision as we have just stated—was living at the time
of the death of Jacob Albert.    Two other children of
Augustus J.—a son and a daughter—were also then liv-
ing, but are now both dead, having died in the life-time
of their father.    The deceased daughter left surviving her
one child, Mrs. Winchester ; and the deceased son four
children, Dora, Fannie, Joseph T. and Augustus J.    All
five of these grandchildren of Augustus J. Albert were
born *after the death* of Jacob Albert.    It has been there-
fore insisted that it is *possible* that these equitable life
estates created for these grandchildren of Augustus J.
and great-grandchildren of Jacob Albert, *may not* termi-
nate during the lives of any of the *children* of Augustus

J., who were living at the time of the death of Jacob Albert, and within twenty-one years and a fraction after the death of the last survivor of such children ; and that in consequence, as part of the settled property is embraced, they offend against the rule prohibiting perpetuities, and that the entire attempted execution of the power by Augustus J. Albert is therefore wholly void ; whereby under the third clause of Jacob Albert's will the children and grandchildren of Augustus J. took a vested absolute estate in the settled property. It is undoubtedly true that where bequests are made to a *class,* and some of the class are *in esse,* and capable of taking without violating the rule, and some are not, the whole bequest must fail, for the very conclusive reasons given by Sir WM. GRANT in *Leake vs. Robinson,* 2 *Merivale,* 390, quoted with approval in *Goldsborough vs. Martin, supra.* But where the bequests have been made to *individuals,* some of whom are capable of taking and some of whom are not, a different consequence follows. Thus in *Wilson vs. Wilson,* 4 *Jur.,* (*N. S.,*) 1076, the bequest was a sum of money upon trust to pay the income to the testator's wife during her life, and after her death in trust for the then present and future children of J. L., *who should be living at the death of the testator's wife,* and who should attain the age of twenty-one or marry, in equal shares, and the testator directed that the shares of each daughter should be settled upon trust for her life, and after her death for her children. Sir W. WOOD decided that the trust in favor of a child of a daughter who was living at the death of the testator was valid. He said "I can conceive no ground why in respect of a child of J. L., *in esse* at the time of the testator's decease, there should not be a direction that her share should be settled on her children. In *Porter vs. Fox,* 6 *Sim.,* 485, and that class of cases, the difficulty arises from there being a gift to a class of persons some of whom can take whilst others cannot. In these cases it cannot be

ascertained what is the share of each, and hence the gift is held void as to all. Here, however, the children of each child of J. L. form a separate class, and the share of each class is separately ascertainable." Now, we think it cannot be doubted that had Jacob Albert instead of creating the power to appoint, himself given by his will an equitable estate for life in the settled property to his son, Augustus J., and then a further similar life estate in the same property to each of Augustus J. Albert's children in equal shares, living at Jacob's death, with remainders in fee to their children respectively, upon the death of each child of Augustus J., leaving issue surviving, that the provision would have been perfectly valid and beyond question. The rule forbidding perpetuities would not have been infringed, for the trusts would have extended to a period of time covering only lives in being at the death of the testator. This is precisely the case now before us in so far as the two living daughters of Augustus J. Albert are concerned. The trusts, as respects their shares of the estates, do not extend beyond their lives, and they were both lives in being at the death of Jacob Albert. Hence the appointment of these two daughters' shares of the settled property in trust during their lives is in no manner obnoxious to the objection that the period beyond which the trust could not lawfully extend has been exceeded. The same is true with regard to Joseph T. and Augustus J. Albert, Jr., sons of Joseph Taylor Albert; because, though they were not born during the life-time of Jacob Albert, they were both born during the life-time of Augustus J., and they must, of necessity, if they live, attain their majority (the time fixed for the indefeasible vesting of their shares), inside of the period of twenty-one years after the termination of the life estate of Augustus J. Albert; and hence their estates are not within the rule. In the event of their death before reaching twenty-one their interests will vest at once under the provision dis-

posing of the cross-remainders, and the rule would not apply. In regard to the four living sons of Augustus J. Albert, so far as the trusts extend for their respective lives, the result would be the same ; but there is added in each of their cases the further trust during the life of the wife of each, and it has been insisted that this circumstance renders the limitation void, because the wife may not have been *in esse* at the death of Jacob Albert. But this does not necessarily affect the question, because it does not appear that in fact the wife of either of these four sons was born after the death of Jacob Albert, and we certainly are not justified in assuming that such is the case merely for the purpose of striking down these trusts, when in reality the *fact* may be otherwise. Conceding, however, that these limitations during the lives of these sons' wives are too remote, the doctrine of election would be applicable, for the reasons we shall state further on.

The remaining limitations relate to Mrs. Winchester, Dora Albert, now Mrs. Dora Smith, and Miss Fannie Albert. These ladies were all born *after* Jacob Albert's death and they were consequently not lives in being at that time ; and it is entirely *possible* that they may live for a period longer than twenty-one years after the death of the longest liver of Jacob Albert's six surviving children. This *possibility* would bring these trusts as respects these *grand-daughters* within the rule, for the vesting of the ultimate remainders after their life interests terminate is postponed till the expiration of those precedent estates. Hence as to them these trusts are, under the rule, void. But we do not consider that the other trusts previously alluded to are affected thereby for the reasons assigned by Sir WM. GRANT in *Leake vs. Robinson*, and by Sir W. WOOD in *Wilson vs. Wilson, supra*. Whilst we hold these limitations with respect to these *grand-daughters* too remote, it is clear, we think, the doctrine of election is applicable here as in the instance of the four sons. These limi-

tations in reference to the grand-daughters and the sons' wives being void, there was no exercise of the power of appointment by Augustus J. Albert in these instances, and consequently the estate to which these four sons and three grand-daughters were entitled in the settled property vested in them under the will of Jacob Albert in default of an appointment by Augustus J. Albert. But the latter attempted to dispose of the *whole* of the settled property, and hence if the claim be allowed as insisted upon, that these sons and grand-daughters are entitled absolutely to their proportions of the settled property, in spite of the evident attempt of Augustus J. to make a disposition of it; and these same parties are permitted to take under the will of Augustus J. that part of *his* estate given to them therein ; the anomaly would be presented of their claiming both *against* and *under* his will. "From the earliest case on the subject the rule is, that a man shall not take a benefit under a will, and at the same time defeat the provisions of the instrument. If he claims an interest under an instrument, he must give full effect to it, as far as he is able to do so. He cannot take what is devised to him, and, at the same time, what is devised to another ; although, but for the will, it would be his ; hence he is driven to his election to say, which he will take." *McElfresh, Adm'r vs. Schley,* 2 *Gill,* 200. Hence, these grand-daughters will be required to make election whether they will take absolutely under the will of Jacob Albert their proportion of the settled property and relinquish all claim to participate in Augustus J. Albert's estate ; or to abide by the will of the latter in its entirety. And should the fact be that the wives of the sons of Augustus J. Albert were not *in esse* at Jacob Albert's death, these sons, or such of them as shall be so situated, will also be required to make a similar election. These elections must be made within such reasonable period as the Court below may fix in its decree to be passed in conformity with this opinion.

Ryan and McDonald *vs.* Gross.

We do not think that the objection made to the mode of the exercise of the power of appointment can prevail. Augustus J. Albert did not delegate or attempt to delegate to his executors the authority to make the appointment. He exercised the power himself, but he left merely the *division* of the property to his executors. This we do not regard as a delegation of the power by any means.

It follows from what has been said, that those parts of the decree appealed from which declare the will of Augustus J. Albert void in so far as it undertook to dispose of the settled property; and which declare that the parties to the cause are not required to make election, must be reversed; and the case will be remanded that a decree may be passed in conformity with this opinion; the costs to be paid out of the estate.

*Reversed and remanded.*

(Decided 6th January, 1888.)