WILLIAM GRAY ET AL.

*vs.*

## THE PETER GRAY ORPHANS' HOME AND MECHANICAL INSTITUTE OF WASHINGTON COUNTY ET AL.

*Charitable uses and trusts*: 43 *Eliz. Chapter* 4; *not in force in Maryland. Wills*: *interpretation; trusts; creation of——. Act of* 1888, *Chapter* 249, *Code, Art.* 93, *sec.* 328.

The Statute of 43 Elizabeth, Chapter 4, known as the Statute of Charitable Uses, has never been in force in Maryland, and, independent of that statute a court of chancery can not, in the exercise of its ordinary jurisdiction, sustain and enforce a bequest to charitable uses which, if not a charity, would be void on general principles.                                    p. 601

In Maryland, when property is left to a corporation for such uses as are within the scope of its corporate purposes, or the objects to which the gift is to be applied are such as the corporation was organized for, such gift can not be declared invalid on the ground that it conflicts with the rule against perpetuities, unless the intention to create a trust is clear.          p. 601

In construing wills, the intention of the testator, as gathered from the four corners of the instrument, is to govern, unless it contravenes some positive principle of law, or is frustrated by some unbending rule of construction in assigning an inflexible meaning to particular words.                          p. 603

Even when technical words are used, though a testator will ordinarily be presumed to have used them in their legal sense, a different meaning will be given to them when the context clearly indicates that such technical import would defeat the testator's manifest intention.                         p. 603

Courts ought not to be astute in striving for a construction which would nullify a will, if there are other equally reasonable interpretations which would support it.                p. 603

A trust may be created either by the use of appropriate technical words, or by any other language, when the purpose is sufficiently clear.                                        p. 603

But if it be manifest that the design was *not* to establish a trust, then no trust will be declared, although the words employed would, but for the contrary intention, be sufficient to create a trust.                                         p. 603

A testator, by his will and last testament, made full provisions for the formation of a corporation for the carrying out of his wishes as to the founding of a home and technical training school for orphan children; after stating the plan and scope of the institution, a sub-section of the will directed that the provision should be made that *all* the white children of Washington County, in the State of Maryland, not under six nor over ten years of age, who had no father, mother, stepfather or stepmother to care for them, etc., etc., should be eligible for admission to said "Home and Institute," and entitled to all the advantages and benefits thereof, etc., etc.: *Held,* that:

It was not the intention of the testator to constitute each individual member of the class named a *cestui que trust* of the fund.                                                 p. 604

It is against the policy of the law to construe a will so as to make it create a trust, when its language is susceptible of another reasonable interpretation.                          p. 604

The intention of the testator was to pass the property to the corporation for its general corporate purposes as expressed in the will and in the charter of the corporation; that the corporation takes both the legal and beneficial title to the property, and that no trust was intended to be created.          p. 605

*Decided May 4th, 1916.*

Appeal from the Circuit Court for Washington County. In Equity. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Levin Stonebraker* and *Frank G. Wagaman* (with whom were *Wagaman & Wagaman* on the brief), for the appellants.

*H. H. Keedy, Jr.,* and *Charles A. Little,* for the appellees.

BURKE, J., delivered the opinion of the Court.

The bill in this case was filed by certain heirs at law and next of kin of Peter Gray, late of Washington County, for the construction of his will. Mr. Gray died in July, 1910, and his will was admitted to probate by the Orphans' Court of Washington County on the 16th day of August, 1910. The value of his total estate, real and personal, amounted approximately to $43,957.47, made up as follows: $12,757.47 in personal property, including debts due the estate, and real estate appraised at $31,200.00. A part of his real estate consisted of a farm located at Mapleville, in Washington County, and appraised at $6,000.00, and known as the San Mar farm. By his will, which was dated the 21st day of May, 1910, Mr. Gray directed that he be buried in the triangular piece of ground in the front yard of the house on the said farm, and that a monument of a certain design to cost not more than $2,000.00, be there erected to mark his grave. After the payment of all his just debts and funeral expenses and the cost of the monument, he devised and bequeathed to Charles A. Little, the executor of the will, all the rest and residue of his estate to be held in trust and dis-

posed of in the manner thereinafter mentioned, with full power to him during the continuance of the trust to manage said property and estate, invest the funds thereof and re-invest the same, to collect the rents, issues and profits, and apply the same as directed in the will. In the third item of the will the testator declared it to be his desire "to make pro-vision, as far as lies in my power, for the maintenance, edu-cation and training of the white orphan children of Wash-ington County, Maryland, in mechanical trades and arts, in useful occupations, and in common school branches." He then named in this item nine residents of Washington Coun-ty, in whom he had great confidence, "to carry out my plans and purposes in this matter as hereinafter set forth." He directed, in the fourth item of the will, that the persons named in the preceding item, or their successors, appointed in the manner set forth in the will, should, within twelve months after his death, form a corporation under the laws of this State "for the purpose of carrying out my plans and purposes as herein set forth." He then directs that said corporation "shall be given all powers necessary to carry out my purposes, not inconsistent with the provisions of the Cor-poration Law of Maryland, and to have all the powers inci-dental to corporations of this kind and character." He then gave certain directions and suggestions to be followed in the formation of the corporation.

It was provided by the Act of 1888, Chapter 249 (codified in *Bagby's Code,* Article 93, Section 328) that:

"No devise or bequest of real or personal property for any charitable uses shall be deemed or held to be void by reason of any uncertainty with respect to the donees thereof, provided the will or codicil making the same shall also contain directions for the forma-tion of a corporation to take the same, and within the period of twelve calendar months from the grant of probate of such will or codicil a corporation shall be formed, in correspondence with such directions, capable and willing to receive and administer such devise or bequest."

A corporation was formed by the persons named by the testator in substantial compliance with the provisions of this Act and of the will of the testator to carry out his plans and purposes, as expressed in the will. The corporation has elected its officers and expressed its readiness to undertake the discharge of the duties imposed upon it by the will. After the formation of the corporation, the executor was directed to convey to it the San Mar farm, above referred to, situated near Mapleville, in Washington County.

The trustee was directed to hold the entire residue of the estate, and, after providing out of the income for the comfortable support of the testator's widow during her life or widowhood, to pay the surplus income to the corporation in furtherance of the objects and purposes for which it was formed. Upon the death or remarriage of Mrs. Gray, the widow, all of the furniture, household effects, etc., were given to the corporation, and the trustee was directed to convert into cash the whole remaining estate, except $3,000 worth of bonds (face value) of the Washington County Water Works, and out of the proceeds to pay $500 absolutely to George Gray, and to pay the balance over to the corporation as "a part of the fund invested" for said corporation. Provision is then made with respect to said bonds of the Water Company, the income from which, except as to the income on $200, was directed to be paid to certain nephews and nieces during their respective lives, and then paid over to the corporation.

The directions and suggestions given as to the formation of the corporation, and which, as we have said, have been substantially complied with, are as follows:

"1.—The name, style and title of said corporation shall be The Peter Gray Orphans' Home and Mechanical Institute of Washington County, Maryland.

"2.—The number of directors shall be nine, to serve for life or during their pleasure, all vacancies to be filled by the remaining directors.

"3.—The incorporators to be named as directors.

"4.—The existence and duration of said corporation to be for as long a period of time as is allowed by the laws of the State, but I hereby direct that said corporation shall be continued by the renewal of its charter from time to time.

"5.—The principal office and place of business of said corporation shall be at the farm hereinafter mentioned and the regular meetings of the said directors shall be held at the said farm, in Washington County.

"6.—The said corporation shall have no capital stock and no shares of stock or stock certificates."

The "plans and purposes" which the testator had in mind, and which he hoped to have realized through the instrumentality of the corporation which he directed to be formed, are set out in the seventh and eighth sub-paragraphs of the fourth item of the will, and as they give rise to the important question in the case, are here inserted:

"7.—The said directors shall be given the power and authority to have the entire management of the said The Peter Gray Orphans' Home and Mechanical Institute of Washington County, Maryland, which shall hereinafter, for the sake of brevity, be called 'Home and Institute,' and of all the property and funds thereto belonging, including the property and funds herein given them as well as all other funds and property that may be given to them, with full power to invest and reinvest said funds and to collect the income therefrom and to use the same for the purposes herein specified. They shall be empowered to establish said 'Home and Institute' on the said farm hereinafter more specifically described, to employ such teachers, instructors, assistants and servants as they may find necessary, always keeping within their income. They shall provide for feeding, clothing and maintaining the inmates of said 'Home and Institute.' They shall provide for teaching the boys, admitted to said 'Home and Institute,' the carpenter and joiner trade, and along

with this they shall be taught housepainting and be given such instruction in draughting and mechanical drawing as shall be necessary to be known by a first-class carpenter and joiner. They shall also have power to make provision for teaching the girls admitted to said 'Home and Institute' housekeeping and the various kinds of needlework, and they shall have power to make provision in such way as to them may seem best to give to all the inmates of said 'Home and Institute' a common school education, either by sending them to the public school of the community, or by providing for such instruction in the said 'Home and Institute,' if the number of inmates and the funds available are sufficient and the directors deem it wise and best so to do. If the provisions hereinbefore made do not consume all the income of the said 'Home and Institute,' then provision shall be made for teaching the following trades and occupations in the order in which they are named, the list to be followed only so far as the income will allow, namely, cabinet making, blacksmithing, bricklaying and stone mason work, and if the funds or income permit further enlargement of the scope of training, such other useful trades and occupations as to the directors may seem best.

"8.—Provision shall be made that all white children of Washington County, in the State of Maryland, not under six, and not over ten years of age, who have no father, mother, stepfather, nor stepmother, to care and provide for them, and who have not inherited money and property sufficient to maintain and educate them, shall be eligible for admission to said 'Home and Institute' and entitled to the advantages and benefits thereof, and I further direct that the said directors shall have power to make all necessary rules and regulations concerning the admission of inmates to said 'Home and Institute' not inconsistent with the provisions herein contained, and also power to expel from said 'Home and Institute' such inmates whose longer connection with said 'Home and Institute' will in their

judgment be detrimental to the said 'Home and Institute' and to the other inmates thereof, and if at the time the directors deem it advisable to have any orphan children, as designated above, bound out to the said 'Home and Institute' they shall be given power to have this done. The children admitted to the said 'Home and Institute' shall be allowed to remain there for such length of time as may be necessary, in the opinion of the directors, to make them proficient in the trades and occupations in which they have been taking instruction, but in no case shall any orphan remain in the said 'Home and Institute' after attaining the age of twenty-one years, in the case of boys, and eighteen years, in the case of girls, unless said girls may be bound out to said 'Home and Institute' for a longer period."

The testator further directed that the "Home and Institute" be established on the San Mar farm, and gives instructions as to changes in the existing buildings on the farm so as to make them suitable for the purposes of a home and institute, and empowers its directors from time to time to add such additional buildings and improvements as they may deem necessary to carry out his intentions, and he declared that inasmuch as a large portion of the funds and property which would eventually come to said corporation under the provisions of his will would probably not be available for some time, he suggested to the directors of the corporation "that they begin operations in a small way, and keep within their income, and that they enlarge their field of operations and extend their work as funds become available, it being expressly provided and understood that only the income from the property and funds given to said corporation should be used for maintaining said 'Home and Institute.' "

The tenth item of the will is as follows:

"The 'Home and Institute' herein provided for will, I hope, become a great blessing to Washington County. I know it will become so if properly managed, and in

devoting my property and means to this work I do so in the hope that much good may result and that many orphan children of the county may be benefited and cared for. I request that the persons who become the incorporators and directors of this corporation will use their best efforts to make the 'Home and Institute' a success. And I hereby suggest that the directors of said corporation make an effort to have the property, funds and investments of said corporation exempt from taxation, and I hereby express the hope that other charitably disposed persons will make gifts to said corporation to assist in the work herein outlined, and I hereby agree that the money and property may be received from other persons and used along with the bequest made by me provided it is used for the same purposes and along the lines herein laid down by me."

He further provided that the officers and directors of the corporation should serve without pay.

It was said in *Russell* v. *Allen*, 107 U. S. 163, that: "By the law of England from before the Statute of 43 Eliz., Ch. 4, and by the law of this country at the present day (except in those States in which it has been restricted by statute or judicial decision, as in Virginia, Maryland and, more recently, in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be co construed as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him can not be followed. They may and, indeed, must be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential ele-

ment of indefiniteness, which is one characteristic of a legal charity. If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead."

It was held in *Dashiel* v. *The Attorney-General,* 5 H. & J. 392, that the Statute of 43 Elizabeth, Chapter 4, known as the *"Statute of Charitable Uses"* was not in force in this State, and that "independent of that statute a Court of Chancery can not, in the exercise of its ordinary jurisdiction, sustain and enforce a bequest to charitable uses, which if not a charity, would on general principles be void." This continued to be the law of this State until the passage of the Act of 1888, Chapter 249, which abolished under certain conditions, the rule as to uncertainty under which so many devises and bequests to charitable uses had been stricken down.

It can not now be disputed that if the devises and bequests contained in Mr. Gray's will passed the property to the corporation for its general corporate purposes and uses and that those uses constitute charitable uses, or legal charities, within the meaning of the Act, they must be held valid. This proposition is firmly established by many cases in this Court, and we need only refer to the recent case of *Ballzell* v. *Church Home,* 110 Md. 244, in which the subject was thoroughly considered and many cases reviewed by CHIEF JUDGE BOYD. It was said in that case that: "The cases in this State fully establish the doctrine, that when property is left to a corporation for such uses as are within the scope of its corporate purposes, or the objects to which the gift is to be applied are such as the corporation was organized for, then such gift can not be declared invalid on the ground that it was in trust for indefinite objects, or in conflict with the rule

against perpetuities, unless the intention to create a trust be clear. If this were not so, it would be useless to organize charitable corporations of the character of these appellees, for what we are now considering applies to both."

But it is contended that the statute does not apply to this case, because the devises and bequests are to the corporation in trust, and that the *cestuis que trustent* "are described and designated with sufficient certainty and definiteness as to be readily ascertainable by a court of equity, and that neither the said corporation nor its officers are vested with any power of selection as to the particular individuals to be cared for by said "Home and Institute; and that the orphans who are to become the beneficiaries are not uncertain and indefinite." Upon this ground it is argued that the will creates a perpetuity as to the devises and bequests to the proposed corporation and is void to that extent.

Does the will of Mr. Gray create a trust of the character asserted? Whether it does or does not depends upon the true interpretation of his will, and in interpreting the language used by him "we must be governed, in a great measure, by general rules and principles of construction applicable alike to all similar instruments, rather than merely by adjudged cases seemingly analogous; because, as observed by Lord Wensleydale, in *Grey v. Peason,* 6 H. L. 108, 'when the decision is not upon some rule or principle of law, but upon the meaning of words in instruments which differ so much from each other, and when the proper construction is so varied by the peculiar circumstances of each case, it seldom happens that the words of one will are a sure guide for the construction of words resembling them in another.'

"The intention of the testator as gathered from the four corners of the instrument is to prevail, if there be apt words used to effectuate it, unless it contravene some positive principle of law or be frustrated by some unbending rule of construction assigning an inflexible meaning to particular words. In discovering that intention all parts of the will are to be

construed in relation to each other, without regard to the order in which they occur, and so as, if possible, to form one consistent whole. Even where technical words are used, though the testator will be ordinarily presumed to have used them in their legal sense, a different meaning will be given to them when the context clearly indicates that such technical import would defeat his manifest intention." *Albert* v. *Albert*, 68 Md. 352. And "Courts are not, or ought not to be, astute in searching for a construction which nullifies a will if there are other equally reasonable interpretations which support it." *Bennett* v. *Humane Imp. Society*, 91 Md. 10.

Has a trust been created? In *Bennett* v. *Humane Imp. Society, supra,* the rule to be observed by the Court in the consideration of that question is thus stated: "A trust may be created either by the use of appropriate technical words which, of their own proper vigor, indicate that a trust was designed to be raised; or, in the absence of such words, a trust may be created by other language when the purpose to establish it is otherwise sufficiently apparent. In both instances, however, it always becomes a question of intention as to whether a trust exists. If there be a manifest design to establish a trust then a trust will be declared though no apt technical words are employed; and if there be an equally manifest design not to establish a trust, then no trust will be declared though the words employed would, but for the contrary intention, be sufficient to create a trust. Now, in the clause under consideration no trust is declared in technical terms. That is conceded. Whilst no set form of words is required to create a trust, if there be an intention to create one, still there must be a manifestation on the face of the will of such an intention before a trust will be declared. The particular circumstances which denote such an intention are necessarily variant; but when a trust of the kind relied on here is asserted it may be generally affirmed that where there is a gift to one for the use of another, or where

the legatee or devisee is clearly designed to have no beneficial interest in the property given to him, a trust for the benefit of some one was intended to be created. And this conclusion would result either from the words used or from the legal effect of the instrument itself. In the one case there would be an express declaration of a trust, in the other there would be a trust by construction; but in both it is essential that there should be an intention to create a trust, or none will arise."

The language of the will is plain. It contains no technical terms, and it discloses the plans and purposes of Mr. Gray, and provides for the formation of a corporation to carry them out. That he intended to establish a *permanent institution* for the purposes indicated in his will there can be no doubt. The gifts are to the corporation without qualification except as to their use. There is no express trust created, but the court is asked to declare a trust, by construction, upon the language employed in the eighth sub-paragraph of the third item of the will. This paragraph has been quoted in full, and it is argued that it manifests a clear intention to create a trust. Undoubtedly, by the language used in that paragraph the testator expressed an intention that a certain defined class of white orphan children should be eligible or qualified to be admitted to said Home and Institute. But it does not, in our opinion, show that it was the intention of Mr. Gray that each individual of that class should have an absolute and unrestricted right to be admitted. In other words, it does not show an intention to constitute each individual member of that class a *cestui que trust* of the fund. There are good reasons why such a construction should not be adopted. First, it creates a trust upon language which is susceptible of another reasonable interpretation. Mr. Gray knew his fortune was small, and that the institution must begin in a very small way, and it certainly could not have been his intention that each individual of the defined class should have an unrestricted right to be admit-

ted, regardless of the ability of the institution to care for
him or her. Again, such construction would compel the
admission, from the class defined, of diseased, feeble-minded,
or deformed children against the consent of the authorities
of the institution. Our conclusion from a careful examina-
tion of the whole will, is that it was the intention of Mr.
Gray to pass the property to the corporation for its general
corporate purposes as expressed in his will and in the char-
ter; that the corporation takes the legal and beneficial title
to the property devised and bequeathed, and that no trust
was intended to be created. There being no trust the case
is at an end, and the decree of the lower court which sus-
tained the bequests and devises to the corporation was cor-
rect and should be affirmed. It will be noted that this opin-
ion proceeds upon the assumption that the corporation would
not have power to admit to the institution any white or-
phans of Washington County not answering to the descrip-
tion defined in the eighth sub-paragraph mentioned above.
Upon that question we have not found it necessary to express
any opinion.

> *Decree affirmed, with costs to be paid out of the
> estate.*