RICHARD M. CHASE, JR., and MARIA M. POSTELL vs. FRANK. H. STOCKETT, and ZACHARIAH D. RIDOUT, Executors, and others. MARY B. RIDOUT, AMELIA RIDOUT, and others vs. RICHARD M. CHASE, JR, and others. WILLIAM G. RIDOUT, JOHN SHAAFF STOCKETT, and others, Trustees of the CHASE HOME vs. SAME. WILLIAM CHASE BARNEY, and CATHARINE CHASE OLDFIELD vs. WILLIAM G. RIDOUT, JOHN SHAAFF STOCKETT, and others, Trustees. MARY ALRICKS vs. RICHARD M. CHASE, JR., and others. MAGGIE D. RIDOUT, HORATIO S. RIDOUT, and others vs. SAME.

*Construction of Will—Declaration of Trust—Devise to Charitable uses—Act of 1888, ch. 249—Parol proof of Intention of Testatrix—Memorandum left by Testatrix—Section 310 of Article 93 of the Code.*

The Act of 1888, ch. 249, declares that "no devise or bequest of real or personal property, for any charitable uses, shall be deemed or held to be void by reason of any uncertainty with respect to the donees thereof, provided, the will or codicil making the same shall also contain directions for the formation of a corporation to take the same, and within the period of twelve calendar months from the grant of probate of such will or codicil a corporation shall be formed in correspondence with such directions, capable and willing to receive and administer such devise or bequest." A testatrix devised certain real estate to trustees "to establish a home for destitute, aged and infirm women," and directed and authorized such trustees, "if in their judgment they may think best, to become a body corporate, either under a special charter * * * or under the general incorporation laws of the State." The will was executed prior to the passage of the above Act, but the testatrix died after its passage. The trustees became a body corporate under the gen-

eral incorporation laws of the State within twelve months from the probate of the will.    HELD:

That the devise was valid.

A devise of a house, "together with the furniture which may be in said house at the time of my decease, not including, however, family portraits and silverware," will pass the china and plated ware found in the house.

A testatrix devised "all that lot of ground * * * together with all the buildings and improvements thereon, where I now reside, (not including any of the lots, parts of said property, which have been heretofore leased or sold,") to establish a charitable institution, to be styled "The Chase Home." After the execution of the will the testatrix repurchased a lot, part of said property, which, prior to the execution of the will, had been leased for ninety-nine years, renewable forever, with a ground rent reserved.   Parol proof was introduced to show that, before the testatrix executed her will she had been negotiating with the lessee for the purchase of his leasehold interest, had expressed her determination to repurchase the lot at any price, and had declared her intention that it should go to "The Chase Home." HELD:

That the lot in question, by the plain and unambiguous language of the will, was embraced in the exception, and the subsequent acquisition of the leasehold interest in the lot could not have the effect of taking it out of the operation of the language of the exception; and still less could parol proof as to declarations of the intention of the testatrix have that effect.

A testatrix, after disposing of a portion of her estate, and not being fully prepared to dispose of the balance to the various persons to whom she desired to leave legacies, bequeathed all the residue of her estate and effects of every kind to her executors in trust, that they might apply and pay over the same to such persons and such objects and purposes as she might in writing direct and designate, her purpose being, as expressed, to add a codicil to her will, which would fully set out her wishes in reference to said residue; and in the meantime would give written directions to her executors in reference to the application and payment of the same.   Shortly after the will was admitted to probate, the executors found among the papers of the testatrix a written memorandum or note endorsed "for the in-

Chase and Postell, *et al. vs.* Stockett and Ridout, Ex'rs, *et al.*

struction of my executors." This paper, written two days after the will was executed, was in the hand-writing of the testatrix, and signed by her, but was not attested by any witness. Section 310 of Article 93 of the Code, declares that bequests of personalty and devises of realty shall alike be "utterly void and of none effect," unless they be attested by two or more credible witnesses. HELD:

That the memorandum or note, could not be incorporated into the will by reference, as it was not in existence at the date of the execution of the will; it was "utterly void and of none effect."

The order of the Orphans' Court directing the register to file and record this memorandum, upon the request of the executors that the same might be filed and recorded with the affidavits attesting its genuineness, "to have such effect as it may," will not have the effect of admitting the paper to probate.

APPEALS from the Circuit Court for Anne Arundel County, in Equity.

The case will be found stated in the following opinion of Chief Judge MILLER in the Court below :

" By the bill and proceedings in this case, several questions of interest and importance are presented, arising out of the construction and effect of the will of Mrs. Hester Ann Ridout. The will was executed on the 24th of May, 1886, and the testatrix died on the 13th of December, 1888. By the will, which was admitted to probate on the 18th of December, 1888, the testatrix makes several devises of real estate, and gives a legacy of $10,000 to her cousin, Mrs. Harwood, about which there is no dispute. The clauses of the will which give rise to controversy are the *ninth* and *eleventh*, and these will be considered in their order.

" 1st. By the *ninth* clause, the testatrix, after expressing her desire to 'establish a home for *destitute, aged and infirm women,* where they may find a retreat from the vicissitudes of life, and to endow the same, as far as my means will allow, to be called and known as the "*Chase*

*Home,*'' devises to eight named persons, 'and to their heirs, successors and assigns,' 'all that lot of ground on Maryland avenue, in the City of Annapolis, together with all the buildings and improvements thereon, where I now reside, (not including any of the lots, parts of said property, which have been heretofore leased or sold,) together with the furniture which may be in said house at the time of my decease, not including, however, family portraits and silverware, *in trust,* to be held by them and their successors for the objects and purposes of such home.'

"She then devised to the same trustees certain real estate in the City of Baltimore, to be held by them 'as an endowment or fund to be *used* and applied, as to the rents, issues and profits thereof, for the support and maintenance of the before mentioned "*Chase Home,*" in such manner as may seem best to them, or to a majority of them.' This is all of the clause—a very long one—which, according to my view of the case, it is necessary to quote at present.

"But for the recent action of the Legislature, I should be compelled to declare this devise for the establishment of a most admirable charity *invalid,* by reason of the uncertainty as to the beneficiaries entitled to enjoy it. According to a long line of decisions by the Court of Appeals, a devise for the benefit of 'destitute, aged and infirm women' is void for uncertainty. Happily, however, the Legislature has at last intervened, and by the passage of the Act of 1888, ch. 249, has declared that '*no devise or bequest* of real or personal property, for *any* charitable uses, shall be deemed or held to be void by reason of *any uncertainty* with respect to the donees thereof, provided, the will or codicil making the same, shall also contain directions for the formation of a corporation to take the same; and within the period of twelve calendar months after the grant of probate of such will

or codicil, a corporation shall be formed in correspond-
ence with such directions, capable and willing to receive
and administer such devise or bequest.'

"This law went into effect on the 4th of April, 1888,
and of course operates upon this will, the testatrix hav-
ing died on the 13th of December following. To my
mind it is perfectly clear that it was the purpose of the
Legislature in passing this Act to abolish under certain
conditions, the rule as to *uncertainty*, in obedience to
which so many devises to charitable uses have been
stricken down by the Courts

"The question then is, have the conditions prescribed
by the statute been complied with in this case ? As to
this I have no doubt.

"In the same clause the testatrix says : 'And I hereby
*will and direct*, and fully authorize and empower the said
trustees, if in their judgment they may think best to
become a body corporate either under a special charter
from the Legislature of this State, or under the general
incorporation laws of this State, and whether as trustees
under this will or by incorporation, to make, ordain and
declare whatever rules, regulations, ordinances, or by-
laws as they may deem best for the better government
and advancement of the Home ; provided, always, that
nothing in such charter or incorporation, rules or by-
laws, shall conflict with the provisions of such trust as
declared by this will.' This, as it seems to me, is a
substantial, if not a literal compliance with the condi-
tions of the statute. The law cannot mean that the
corporation provided for shall be created only by special
Act of the Legislature, for this would nullify its opera-
tion, as to all wills which might be admitted to probate
after an adjournment of the Legislature, and more than
twelve months before its next session. Nor do I think
there is any force in the objection that this corporation
under the general law is limited in duration to the

period of forty years. · It is capable and willing to take now, and what may become of this property in case its charter is not extended and made perpetual by the Legislature, it will be time enough to decide when such an improbable event occurs. I am, therefore, clearly of opinion that the devise of this real estate under this clause of the will, for the benefit of this charity, is valid.

" Another question arising under this clause is, does the china and platedware found in the house in which the testatrix resided, pass under the terms, 'together with the *furniture* which may be in said house at the time of my decease, not including, however, *family portraits and silverware?* ' As to this also, I have no doubt. The china and platedware clearly passed. The terms, '*furniture,*' or '*household furniture,*' when not associated with less comprehensive words, embrace everything in the house that has usually been enjoyed therewith, and in this case would have passed the portraits and silverware had they not been expressly excepted. 2 *Jarman on Wills*, 352, *note C.; Kelly vs. Powlet, Ambler*, 605 ; *Nicholls vs. Osborn*, 2 *P. Wms.*, 419 ; *Carnagy vs. Woodcock*, 2 *Munf.*, 234 ; *Richardson vs. Hall*, 124 *Mass.*, 237 ; *Dayton vs. Tillou*, 1 *Robertson*, (*N. Y. Rep.*,) 21.

" The remaining question under this clause is, does what is called the 'Ringgold Lot,' pass under the devise of 'all that lot of ground on Maryland avenue, in the City of Annapolis, together with all the buildings and improvements thereon, where I now reside, (not including any of the lots, *parts of said property*, which have *been heretofore leased or sold?* ') In my opinion it does not, because it is clearly embraced in the exception. The *property* here mentioned, whereon the house in which the testatrix resided stands, fronts on Maryland avenue, and extends from King George street to Prince George street, with a uniform depth of about one hundred and eighty feet. The house spoken of is near the King George street end

of the property, and from the Prince George street end the testatrix, prior to the execution of her will, had, in conjunction with other then joint owners of the same, leased under perpetual leases, and sold off several lots to different parties, on some of which houses have been built.  Among the lots so leased is the one in question to Mr. Ringgold.  It has a front of forty feet on Maryland avenue, and extends back about one hundred and eighty feet.  The lease is for ninety-nine years, renewable forever, reserving a ground-rent ; was executed on the 15th of March, 1883, and was a valid subsisting lease at the time the will was executed.  This lot, therefore, comes within the express terms of the exception.

" But parol proof has been introduced to show, that before she executed her will, the testatrix had been negotiating with Mr. Ringgold for the purchase of his leasehold interest, had expressed her determination to repurchase the lot at any price, and had declared her intention that it should go to the Chase Home.  This testimony has been excepted to, and I cannot think it admissible.  Parol proof is always admissible to apply the language of a will to its subject-matter, but when this is done, such proof is never admissible to show that the testator intended to do something different from what the language of his will plainly expresses.  In *Walston's Lessee vs. White,* 5 *Md.,* 297, a testator, devised all his land called ' Parson's Outlet,' lying on the south side of a certain road, ' except so much of said land as lies south of Beaver Dam Branch,' and the Court held, that extrinsic evidence was admissible to show the location of the land, but not to show what was the *intention* of the testator in the use of the words ' Beaver Dam Branch.'  ' The rule,' says the Court, is this : ' Where the language of the testator is *plain and unambiguous,* such language must govern, and, therefore, extrinsic evidence is inadmissible to show that he *meant* something different from

what his language imports ; but any evidence is admissible, which in its nature and effect simply explains what the testator has written ; in other words, the question in expounding a will is, not what the testator meant as distinguished from what his words express, but simply what is the meaning of his words.  And extrinsic evidence in aid of the exposition of his will, must be admissible or inadmissible with reference to its bearing upon the issue which this question raises.'  Now to apply this rule to this case.  I think it quite impossible for any one to contend that there is any ambiguity in the language of this exception.  It seems to me that if any language can be plain and unambiguous, it is the language here used.  It excepts and excludes from the operation of this devise to the trustees, 'any of the lots —parts of said property—which have been heretofore leased or sold.'  Now when it is shown by extrinsic proof what lots have been so leased or sold the office of such proof is at an end, and the plain language excluding them from the devise must prevail.  Courts cannot allow such language in a will to be controlled or modified by parol proof of intention.  The case is quite different from those of *Warner vs. Miltenberger's Lessee,* 21 *Md.,* 264, and *Adams, et al. vs. Morrow,* 42 *Md.,* 434.  The testatrix did not consummate the repurchase of this lot by receiving a release and reconveyance of the leasehold interest until the 1st of July, 1886, more than a month after the execution of her will.  I hold it to be clear that the mere fact of this subsequent acquisition of the leasehold interest in this lot cannot have the effect of taking it out of the operation of the language of the exception. Much less can parol proof, as to declarations of her intentions, have that effect.  The plain words of a solemn will cannot be thus tampered with.

" 2nd.  The case shows that the testatrix had personal property amounting to more than $80,000 which she

had not disposed of by the previous clauses, and hence the *eleventh* clause, which reads as follows :

" ' Eleventh. Not being as yet fully prepared to dispose of the residue of my real and personal estate to the various persons to whom I desire to leave legacies, I now will and bequeath all the residue of my estate and effects of every kind to my executors, or to the survivor of them, to be held *in trust* and *confidence* that they will apply and pay over the same to such persons and such objects and purposes as *I may in writing direct and designate,* my purpose being, as soon as may be, to add a codicil to this will, which will fully set out my wishes in reference to the residue of my estate and effects ; and in the meantime shall, as far as in my power, give written directions to my executors in reference to the application and payment of the same, having full and entire confidence in their faithful discharge of the trust so confided to them.'

" She appointed as her executors Frank. H. Stockett, Esq., and Dr. Zachariah D. Ridout, who have qualified as such and are proceeding to settle up her estate. Shortly after the will was admitted to probate, the executors found among the papers of the testatrix a written memorandum or note, endorsed, ' For the instruction of my executors, Dr. Z. D. Ridout and Frank. H. Stockett, May 26, 1886.' This paper is in the handwriting of the testatrix and signed by her, but is not attested by any witness. In the body of the paper she commences by saying, ' *At my death I desire to give to,*' and then proceeds to give to various relatives of her deceased husband and of herself, pecuniary legacies amounting in the aggregate to about $39,000. As soon as this discovery was made the executors brought the paper into the Orphans' Court, accompanied by affidavits proving it to be in the handwriting of the testatrix and signed by her, and in their petition prayed that the same may be filed

and recorded with the affidavits thereto attached attesting its genuineness, 'to have such effect as it may.' The Orphans' Court accordingly, on the 27th of December, 1888, passed an order 'that the foregoing papers be filed by the Register of Wills, and by him recorded in accordance with the prayer of the petitioners.'

"Can any effect be given to this paper? The paper, as appears by its date, was written two days after the will was executed, and could not therefore be incorporated into the will by *reference*, because it was not in existence at the date of the execution of the will. The will gives the residue of the estate to the executors *in trust*. They take no beneficial interest, but merely hold the legal title. In such cases where there is no declaration of the trust lawfully and effectually made by the testator, the trustees hold the property in trust for his heirs-at-law or next of kin.

"This proposition is too clear to admit of question or doubt; it is the teaching of all the authorities. The executors, except for this paper, would unquestionably hold the money thereby attempted to be disposed of in trust for the next of kin of the testatrix.

"Is the paper good as a declaration of trust in favor of the parties named in it, and what is the law on this subject? A case very similar to this is that of *Saylor vs. Plaine, et al.,* 31 *Md.,* 158. In that case, after deciding that the parties to whom the will gave the property, held it in trust, and not beneficially, the Court goes on to say that 'the law has wisely thrown around the execution of wills and testamentary papers certain solemnities, the observance of which is necessary to their validity. In the disposition of real estate, it provides that they shall be signed by the testator and attested by three or four credible witnesses. Now if this *unattested* paper, found thirty years after the death of the testator, is to be received as a declaration of trust, if it is to be en-

grafted on the will and to give effect to the same, if in fact it is to control the disposition of the real estate of the testator, would it not be a palpable violation of the statute ? ' What is thus said is also applicable now to bequests of personal property, because since that decision was made the Legislature has placed bequests of personalty and devises of realty on the same footing, and has declared that *both* shall be ' *utterly void and of none effect,* ' unless they be attested by two or more credible witnesses. *Act of* 1884, *ch.* 293 ; *Code, Art.* 93, *sec.* 310.

" The Court then adopts the law as stated in *Lewin on Trusts,* thus : ' Should the testator devise the estate in such language that the will passes the legal estate only to the devisee, and manifests an intention of not conferring the equitable—in short, stamps the devisee with the character of trustee—and yet does not define the particular trust upon which he is to hold; in this case no paper not duly attested (except, of course, papers *existing at the date of the will* and *incorporated by reference*) will be admissible to prove what were the trusts intended. Nor will the devisee be allowed to retain the beneficial interest himself; but while the legal estate passes to him, the equitable will, according to the date and terms of the will, result to the testator's heirs-at-law or general residuary devisee.' To this I may add, that the learned author in the following paragraph states the law to be the same in regard to bequests of personal estate, and it seems to me this must also be the law here since the passage of the Act of 1884. He says: ' So if by will personal estate be given upon trusts to be afterwards declared, the testator cannot by any instrument *not duly executed as a will,* and *a fortiori* he cannot by parol, declare a valid trust, but the equitable interest will result to the next of kin, or pass to the residuary legatee.' *Lewin on Trusts,* 60.

" Among the cases cited with approval by the Court in *Saylor vs. Plaine, et al.,* is *Briggs vs. Penny,* 3 *DeGex &*

Smale, 525; (see also, same case on appeal, in 3 *Macn. &*
*G.*, 546;) a case which has also been approved by the Court
of Appeals in another point in *Maught, Ex'r vs. Getsen-*
*danner, et al.*, 65 *Md.*, 527. That case is strikingly sim-
ilar to this. The testatrix, Frances Harley, by her will
gave the residue of her personal estate to Miss Sarah
Penny, her executors, administrators and assigns, 'well
knowing that she will make a good use and dispose of it
in a manner *in accordance* with my views and wishes.'
At her death four letters were found among her papers,
all in the handwriting of the testatrix, and all evidently
for Miss Penny, one of them being entitled 'my wishes,'
and another 'Directions for Miss Penny.' By these let-
ters she gave sundry legacies and made various other
dispositions of her property, but they were *undated* and
*unattested*. The Court after deciding that Miss Penny
took the estate in trust, and not beneficially, and that
the letters were all probably written after the passage
of the *Wills Act of* 1837, prescribing *formalities* for the
effectual gift of a legacy, as well as after the date of the
will, declared that none of them could be treated as 'of
any avail or efficacy for any purpose,' and in the course
of his opinion, the Vice-Chancellor, Sir KNIGHT BRUCE,
said: 'Before that statute,' (the Wills Act of 1837,)
'A man could not by his will *enable himself* to devise
freehold estates by an unattested codicil. But the rule
may, I conceive, be more largely stated. I apprehend
that a testator by a will, whether made before or after
that Act, could not *enable himself* to make a disposition
of any part of his property *by any means which, if the will*
*had not been made, he could not effectually have used*. Nor
do I recollect any exception or qualification beyond the
well-known one as to affecting real estate, by means of a
will, with debts incurred and legacies given after it,
which is now restricted so far as the statute requires
*particular* formalities for the effectual gift of a legacy.

The power of a testator to *incorporate* in his will another existing paper, which the will by specific reference and description identifies, and the prevention of fraud by compelling a legatee to perform, after the testator's death, a promise made by him to the testator upon the faith of which the testator, to the knowledge of the legatee, gave the legacy, are scarcely exceptions or qualifications.'

"Another similar case is that of *Johnson vs. Ball*, 5 *DeGex & Smale*, 85, where a testator by his will gave a policy of insurance to two persons ' To hold the same upon the uses appointed by letter signed by them and myself.' Several years after the date of the will the testator wrote two unattested letters, making a declaration of the trust upon which the policy was to be held, which were relied upon by the beneficiaries, but the Court rejected them, saying: ' The testator's language appears to point at some letter already signed by him and the trustees; but even supposing it to refer to a letter to be afterwards signed, it is impossible to give effect to any such letter as a declaration by the testator of the trusts on which he had bequeathed the policy to his trustees. To give them any such effect would be to receive as a part of or as codicils to the will, papers *subsequent* in date to the will, which are *unattested* and which have not been *and could not be admitted* to probate. A testator cannot, by his will, *prospectively create for himself a power* to dispose of his property by an instrument not duly executed as a will or codicil.' Among the other English cases to the same effect, reference may be made to *Sidgreaves vs. Brewer, Law Rep.*, 15 *Ch. Div.*, 604; *Singleton vs. Tomlinson, Law Rep.*, 3 *Appeal Cases*, 404; and *Boyes vs. Carritt, Law Rep.*, 26 *Ch. Div.*, 531. Such is the law established by the English Courts, and it has, to a large extent, been approved and adopted here by the Court of Appeals. The bearing and effect of

these authorities on the case before me, seem complete and irresistible, in view of the fact that our Act of 1884 is substantially the same as the English *Wills Act* of 1837, 7 *Wm. IV*, and I *Vict. Ch.* 26, after the passage of which most of these cases were decided.

"These authorities, in connection with the Act of 1884, furnish, as it seems to me, a complete answer to the argument, that this unattested paper is valid, because the testatrix had declared in her will that she has confidence in her executors, that they will apply the property given them in trust to such persons, objects and purposes as she may thereafter in *writing* direct and designate, and that until she make a *codicil* to her will, she will give such *written directions* to them. If there is any force at all in these authorities, it is clear she could not, by her will, reserve to herself the power afterwards to dispose of her property after her death by any paper not executed and attested in the manner prescribed by the statute. If the argument be sound, then any and every testator may execute a duly attested will, giving all his estate to his executors on the same terms, and then afterwards dispose of it, or at least all of the personalty, by loose unattested letters and memoranda.

"This would open the way again to innumerable controversies, and an ever increasing flood of litigation, as to what papers constitute valid testamentary dispositions of personal property, and encourage forgery of such papers, by striking down the salutary change in the law of wills made by the Act of 1884, and restoring the old law on the subject. In my judgment it would be a serious evil if the Courts should allow this to be done. The capital invested in personal property has in recent times become so enormous and important, that it is proper, if not absolutely necessary, that the disposition of it by wills and testaments should be hedged around with the same formalities and solemnities as are required

in like dispositions of real estate. I can see no good reason why this testatrix should be allowed to give away after her death $40,000 of her money by an informal, unattested note, when she could not dispose of one of her farms, worth not one-tenth of that sum, except by a formal, duly executed and attested will.

"For these reasons, and upon these authorities, I am constrained to declare this paper to be, in the language of the statute, 'utterly void and of none effect.' While I am fully persuaded that the law permits me to reach no other conclusion, I must confess I have come to it with much regret, on account of the disappointment which it will necessarily bring if sustained by the Court of Appeals, to the highly esteemed and estimable persons named in the paper, with many of whom I am personally acquainted. It is greatly to be regretted that the testatrix did not carry out her expressed purpose of making a codicil to her will.

"But an argument has been made that the action of the Orphans' Court in regard to this paper, is in effect the *probate* of it as a testamentary document, and that the next of kin cannot attack its *validity* so long as this order remains in force. This question does not appear to be raised by the bill and answer. The main object of these proceedings, as I understand them, is to obtain from the Court a construction of the will, and the effect of this paper in connection with it. But if it is raised, I do not think the position tenable. The Maryland cases (and none others need be referred to) in support of it, such as *Michael vs. Baker*, 12 *Md.*, 158, and *Warford vs. Colvin*, 14 *Md.*, 532, and others, to the effect that probate is conclusive as to the *factum* of a will, if they have any bearing on this case, were all decided under the old law, when wills of personalty were not required to be attested. But even under that law it has never been understood by the profession, or decided, that the

probate of an unattested will, attempting to dispose of real estate, and validly disposing of personalty, and therefore entitled to probate, had any effect upon the rights of the heirs-at-law, or that they were bound to notice it. *Hale vs. Monroe*, 26 *Md.*, 112. The rights of the next of kin are now placed on 'the same footing in this respect as those of the heirs-at-law. Why, then, should they be bound by the unauthorized probate of an unattested paper attempting to dispose of personalty, or required to get rid of it before they can assert their rights to such property? But I do not consider the legal effect of the order passed by the Orphans' Court as amounting to the probate of this paper. It was evidently not the intention of that Court that it should have this effect. It is not to be supposed that the Orphans' Court would admit such a paper to probate in the face of the statute, which declares it to be void for want of attestation. The executors, in their petition, did not ask for this, but simply that it be filed and recorded with the affidavits attesting its *genuineness* ' to have such effect as it may,' and the Orphans' Court simply gratified this *request* of the executors, by ordering the Register to file and record the papers in accordance with their request. The only purpose of this order, and the only one which seems to have been intended either by the executors or the Court, was to place the paper, with the proofs of its *genuineness*, in *safe custody*, so that it could be proved in case the original should thereafter be lost, and this, I think, is its only legal effect. That the Orphans' Court did not suppose it had admitted the paper to probate, is also manifest from the fact that it has allowed the originals to be withdrawn entirely from the custody of the Register, and filed as an exhibit in this case—a proceeding in direct violation of the law, if it was regarded as a probated document. *Code, Art.* 93, *sec.* 339. For these reasons I do not think there is any

Chase and Postell, *et al. vs.* Stockett and Ridout, Ex'rs, *et al.*

force in this argument. The proof shows that the undisposed of real estate is not susceptible of partition, and it must therefore be sold by the executors, and the proceeds paid over to the heirs-at-law.

"The result then is, 1st. That the devise and bequest to the Chase Home, including the china and plated ware found in the house, but not including the 'Ringgold Lot,' must be declared valid. 2nd. That the unattested paper of the 26th of May, 1886, must be declared void and of none effect. 3rd. That the executors must be directed to sell the undisposed-of residue of the real estate, including the 'Ringgold Lot,' and pay the proceeds over to the heirs-at-law. 4th. The executors must be directed to pay and distribute to the next of kin the undisposed-of residue of the personal estate, including the money legacies mentioned in the unattested paper of the 26th of May, 1886, after first paying from such residue the debts of the testatrix, and the costs and expenses of administration; and 5th, the costs of these proceedings must be directed to be paid out of the estate."

A decree was passed in conformity with the foregoing opinion, and from that decree these appeals have been taken.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*\*Frank. H. Stockett, Jr.,* for Richard M. Chase, Jr., and Maria M. Postell, and

*Frank Gosnell,* for William Chase Barney and Catharine Chase Oldfield.

The decree of the Circuit Court is erroneous in sustaining the devise under the ninth clause of the will.

1st. Because the trust thereby declared is void. It is *too vague* and *indefinite* to be carried into effect. *Dashiel*

*Did not participate in the argument, though present.

*vs. Attorney-General,* 5 *H. & J.,* 392; *Hilderman vs. M. & C. C. of Balto.,* 8 *Md.,* 551, 555; *Rizer vs. Perry,* 58 *Md.,* 112; *Henry Watson Society vs. Johnson,* 58 *Md.,* 139; *Isaac vs. Emory,* 64 *Md.,* 333; *Maught vs. Getzendanner,* 65 *Md.,* 533.

2nd. The devise is not saved by the Act of 1888, ch. 249, because the trustees have become incorporated. The Act is unconstitutional and void, being in contravention of section 29, of Article 3, of the Constitution, which requires that *"every law enacted* by the General Assembly *shall embrace but one subject, and that shall be described in its title,* and no law, nor section of law, shall be revived or *amended* by reference to its title or section only."

The title of the Act under consideration is as follows: *"An Act* to repeal and re-enact with amendment, section 77 of Article 93 of the Code of Public General Laws, title 'Testamentary Laws,' *and to add three new sections to said Article, one to come in after section 254, and the other two to come in after section* 305."

This Act is unconstitutional: *First.* Because it embraces several subjects; *Second.* Because only one of those subjects is mentioned in its title, and that one is the repeal and re-enactment of section 77 of Article 93, which relates to the title of foreign executors and administrators to stocks held by their decedents in corporations in this State.

The other subjects embraced in the law but not described in the title are:

1st. That found in section 254*a*, giving to the Orphans' Court power *ex officio,* to order and direct any executor, administrator or guardian—who may appear in default —to return inventories, accounts, &c.

2nd. That found in section 305*a*, being the subject now under consideration, and

3rd. That found in section 305*b*, which provides that in certain cases property over which a testator has a

general power of appointment, will pass under a general devise or bequest.

Under the case of *Stiefel, et al. vs. Maryland Institution for the Instruction of the Blind*, 61 *Md.*, 144, section one of the Act of 1888, chapter 249, is valid, and the remaining sections are unconstitutional and void.

Assume, for sake of the argument, that the law is constitutional, still it does not aid the ninth clause of the will. For the reason that the devise—apart from the provision to form a corporation—being upon authority, clearly void, the property *at once* vested in the heirs-at-law, and it did not lie in the power of the trustees, by the *exercise of their judgment* in forming a corporation, to divest it. *State vs. Warren*, 28 *Md.*, 338.

The devise in Mrs. Ridout's will is not to a corporation to become incorporated, as the Act of 1888 would seem to contemplate, but it is a devise to trustees for indefinite and vague objects and purposes, with authority given to the trustees *"if, in their judgment, they may think best"* to become a body corporate, without any devise of the property or directions whatever to convey the same to such corporation if formed.

Consequently, upon the death of Mrs. Ridout, the property *immediately* vested in her heirs-at-law, and it is no answer to say that the trustees did become a body corporate; for as was held in the *"Tilden Will" Case:* "It is immaterial that the clause may be rendered definite by the action of the executors, as the question must be determined as of the time of the testator's death." *Tilden vs. Green*, 7 *N. Y. Sup.*, 382, 393.

Mrs. Ridout's will does not *" contain directions* for the formation of a corporation *to take the property,"* but leaves it *optional* with the trustees whether or not they shall form a corporation. The language employed by testatrix is : " And I hereby will and directand fully authorize and empower the said trustees, *if in their judgment*

*they may think best,* to become a body corporate ; '' nor is there any *direction* whatever that the corporation shall *take* the property.

Nor is the corporation formed ''in correspondence with such directions, *capable* and willing to *receive and administer* such devise or bequest.''

It having been formed under the general incorporation law, its existence is limited to forty years, (Code, Art. 23, sec. 42, sub-sec. 3,) whereas the will provides that the property shall be held in ''*perpetuity.*''

Again, under the general law, (Code, Art. 23, sec. 53,) this corporation has power to sell, mortgage or dispose of the property on Maryland avenue, whilst under the will the trustees are to hold the same *without power to alien, lease or sell.*

Can it be possible that the corporation mentioned in the record, whose existence is limited to forty years, and whose officers can dispose of the Annapolis property by sale, mortgage or otherwise, is such an one as the testatrix contemplated when she authorized the trustees therein named, ''if in their judgment they may think best,'' to become a body corporate, either under a special charter or under the general incorporation laws, ''*provided always, that nothing in such charter or incorporation,* rules or by-laws *shall conflict with the provisions of such trust as declared by this will?* ''

Mrs. Ridout *expressly* provides in her will that the land and property shall be held in ''*perpetuity,*'' and that the trustees should hold the property for the objects, uses and purposes of the '' Home,'' but *without any power* to alien, lease or sell any part of the property located on Maryland avenue, *which is to be preserved intact for such Home.*

It seems to us that the mere fact that the corporation, at the expiration of forty years, must look to the Legislature to extend or make perpetual its charter, is a com-

plete answer to the contention that this corporation *is capable* to administer this trust. *Burrell vs. Boardman,* 43 *N. Y.,* 254.

*J. Wirt Randall,* and *Frank. H. Stockett,* for the Trustees of the Chase Home.

The trustees of the Chase Home in these appeals, seek to have affirmed the decision of the Circuit Court, sustaining the devises and bequests to them in the ninth clause of the will of the late Hester Ann Ridout ; and the decision, under the said ninth clause, which gives to the trustees the "furniture" which may be in the dwelling at the time of the death of the testatrix, and embracing with it all the china and glass and platedware, excluding the silverware and family portraits, excepted by the will.

The trustees seek to reverse the decision of the Circuit Court which excludes from the devise under the said ninth clause of the will, the "Ringgold Lot."

Without conceding that the devise under the ninth clause is defective or void by reason of being too indefinite or vague, as given simply to the eight named trustees, they contend that even assuming such to be the case, said devise would be cured of any such defect or weakness by that provision of the will by which preference is given to such applicants for this charity, as may be of the descendants of the testatrix's grandfathers, Judges Jeremiah Townley Chase and Samuel Chase.

It is in proof, there are already, and the number is likely to be greatly increased as time advances, many of such descendants, who come within this class of persons to be given preference in selecting inmates of the "Home," any one of whom could apply to a Court of equity to have her privileges and rights enforced, so that there is and can be no want of specific *cestuis que trust* defined, and capable of enforcing said trust. Thus

the requirement of the law, as laid down in the harshest of these decisions, would be gratified, and the trust rendered effectual.

The trustees need not, however, seek aid from this provision to sustain the trust conferred on them, for the will supplies all that is needed under the law, to make effectual the trust, in authorizing and empowering them to become a body corporate.   They have availed themselves of this authority, and have obtained their charter of incorporation under the General Laws of this State.

To this charter the Judge of the Court has attached his certificate, which by sec. 43, of Art. 23, of the Code, is made conclusive evidence, that said charter does conform to the law.

This charter of incorporation was obtained in strict conformity with the provisions of the Act of 1888, ch. 24, sec. 4, (Art. 93, sec. 315, of the Code,) which cover this case completely.

It was made under the directions, and as empowered by the provision of the will, authorizing the trustees to become a body corporate, and they now claim the devise to them as a trust for charitable uses.

Assuming that the devises and bequests in the ninth clause of the will be considered valid, for any of the foregoing considerations, what do they contain ?

1st. The lot or parcel of ground on Fort avenue, in the City of Baltimore, as designated in the will.

2nd. All that lot of ground on Maryland avenue, in the City of Annapolis, where the testatrix resided, together with all the buildings and improvements thereon, (not including any of the lots, parts of said property, which have been heretofore leased or sold.)

3rd. One portion of "all that lot of ground on Maryland avenue, where the testatrix resided," had been leased to one William S. Ringgold, by lease duly executed and recorded, but he had never taken possession

of the same, nor had it ever been separated or enclosed from the lot where she resided, and the lease had been subsequently assigned or released to the testatrix, so that she owned the fee more than two years before her death.

The trustees claim that the devise of "all that lot on Maryland avenue, where the testatrix resided" at the time of her death, covers this "Ringgold Lot," for at the time of her death, *when* the will went into effect, it was owned by her in fee, in her complete possession, and constituted a portion of "all that lot on Maryland avenue where the testatrix resided," as much as any other portion of that lot, and therefore was clearly embraced in this devise, *as of the date of her decease.*

The exception to, or reservation connected with, and qualifying this devise, and included in brackets, (not including any of the lots, parts of said property, which have been heretofore leased or sold,) should be confined to the *condition of the lots as of the date of the will,* and it is in proof that several portions (six in number) other than the Ringgold lot, and portions of said property, had heretofore been leased or sold, and that it was to those alone that the testatrix intended the reservation to apply. In support of this claim, it is in proof and not controverted, that *prior* to the date of her will, she had commenced negotiations for the purchase of the lease of this lot, for the express purpose of reuniting it with the other property, and with the design of disposing of it in connection with the dwelling lot as *one property,* and had expressed her determination to become the owner of it for that object and purpose, at whatever price it could be purchased. It is also in proof that she so considered this lot as forming a portion of the dwelling lot, and *as one property,* continuously up to her death.

The intention of the testatrix, that this lot should pass under her devise to the trustees is therefore most clearly and uncontrovertibly proved, and the terms of the will are broad enough to embrace it, as the property stood *when the will became operative. Article* 93, *sec.* 321, *of the Code; State, use of Dittman, Adm'r vs. Robinson and Campbell,* 57 *Md.,* 500 ; *Hammond, et al. vs. Hammond, et al.,* 55 *Md.,* 576; *Hammett vs. Hammett,* 43 *Md.,* 307; *Hawman, &c. vs. Thomas, &c.,* 44 *Md.,* 30, 43; *Brome vs. Pembroke, et al.,* 66 *Md.,* 196.

Parol or extrinsic evidence is admissible to prove what the testatrix meant by "all that lot." Parol proof is always admissible to *apply* the language of a will to its subject-matter. 1 *Green. Evi., sec.* 291, *&c.; Walston vs. White,* 5 *Md.,* 297.

It is for this purpose that the testimony was offered, not to explain or show what was her *intention,* but what she *meant* by the words she used to *explain* what she had *written. Hammond, et al. vs. Hammond, et al.,* 55 *Md.,* 576; *Warner vs. Miltenberger, &c.,* 21 *Md.,* 264.

The words of the will make a clear case of a *latent* ambiguity. The meaning of the words, "all that lot," is what the Court seeks to be informed by extrinsic evidence, and this is always allowed. The *meaning* of the words is plain enough, taken by themselves. Therefore, there is no patent ambiguity, but the application of the words to the subject-matter creates a *latent* ambiguity, which is sought to be cleared up by the proof. What the testatrix meant to express by "all that lot," and what she understood as excluded by the words included in the brackets are a proper subject-matter for inquiry, and to be answered by extrinsic evidence. *Brome vs. Pembroke,* 66 *Md.,* 196; *Warner vs. Miltenberger, &c.,* 21 *Md.,* 264; *Hawman, &c. vs. Thomas,* 44 *Md.,* 30.

It was clearly the desire of the testatrix, as shown by the proof, to provide for the endowment and support of

Chase and Postell, *et al. vs.* Stockett and Ridout, Ex'rs, *et al.*

the " Chase Home," by giving to the trustees the residue of the estate after certain legacies, to be specified, should be paid, and the devise and bequest in the *eleventh clause* of her will, to her executors of this residue, was for that purpose.

*James R. Brashears,* and *E. C. Gantt,* for Maggie D. Ridout, Horatio S. Ridout, and others.

*Francis E. Pegram,* for Mary Alricks,

*John Ireland,* and †*James Revell,* for Richard M. Chase, Thomas C. Chase, and others, and

*Frank. H. Stockett,* for Mary B. Ridout, Amelia Ridout, and others.

The paper-writing, endorsed "For the instruction of my executors, Dr. Z. D. Ridout and Frank. H. Stockett, May 26th, 1886," was never considered by the executors, and is not now claimed, to be a *testamentary paper.* It was not so offered to the Orphans' Court, nor was any probate asked on it. The object for which it was so offered was for its safe-keeping and identification, and "to have such effect as it may," and it was in the discharge of what the executors considered their duty, that said paper was delivered to the said Court, and asked that it be ordered to be recorded.

These appellants do not contend that the said paper-writing would be valid as a testamentary paper. As such it would be excluded by the provisions of the Act of 1884, ch. 293, Art. 93, sec. 310, of the Code. This paper is not a *bequest* of any goods, chattels, or personal property of any kind, as designated by said law. The *bequest* had already been made and perfected by the eleventh clause of her will, validly executed in every respect

*Took no part in the argument, although present.
†Was not present.

to dispose of every species of property, and this operating, as at her death, *divested* all of her estate from any claims on the part of her heirs-at-law, or next of kin, and *vested* all of it in her executors.

Though not a *testamentary* paper, and therefore not requiring probate, having been executed under the power reserved in the will, it became a part of her will as much as if it had been therein incorporated, so as to remove it from the restrictions imposed by the Act of 1884, ch. 293. As such, these "instructions" come within and are covered by the decisions in *Metham vs. Duke of Devonshire*, 1 *Peere Williams*, 530, and *Lord Inchiquin vs. French*, 1 *Cox Chan. Cases*, 1–42.

In neither of these cases was the declaration of the trusts admitted to probate, nor was either executed in the forms required to pass or bind real estate, yet each was recognized as a part of the will, and the legacies sustained.

It will not be contended that this was not a *valid* devise and bequest, and as such, could be divested only for the reason that no clearly designated persons, or defined objects, were pointed out for the recipients of the bounty covered under the trust, to the executors.

It is conceded that the executors took no beneficial interests under this clause, but the devise was in no wise diminished in its validity for that cause. The Courts all agree, that if the declaration of such trusts is made sufficiently specific, that a Court of chancery can administer it, then the trust will be sustained.

Can it be contended that this trust, so far at least as the persons and objects named in the "instructions," is too vague and indefinite to be enforced by a Court of chancery? There is not an element of doubt or uncertainty in respect to it, so far at least as would impair full relief in its administration, by a Court of chancery. It is a perfect declaration of trust in favor of the parties

named in it, and made under a reservation which is so precise, and clearly designated, that none of the controversies, or litigations intended to be provided against by section 301 of the Act of 1884, ch. 293, could by possibility arise.

It can only be by a forced and strained construction, that this Act of 1884 can be made to cover this paper-writing; and why should this be done, when the effect would be to work such injustice to the objects of the testatrix's bounty, and to divert her estate to persons whom she never contemplated as entitled to her consideration ?

Is her *intention*, which the Courts say controls the disposal of property by wills, to have no weight ?

Conceding, for the sake of this argument, that the English Courts and text-books are in accord, in excluding under their laws, declarations of the objects of trusts, created by wills, as stated by the Circuit Court in the very able opinion of its Chief Justice, it is submitted that not one of the cases referred to would cover the case now before this Court, except in most general terms. Assuming, however, they were conclusive, in excluding such a declaration of this trust as now presented to this Court, why should this Court be bound by such decisions and rules ? It has often manifested its freedom from being so controlled.

What greater unanimity could be found than in the decisions of the English and many American Courts, and the text-books, in respect to what is derisively called "Spendthrift Trusts ? " by which the objects of the bounty, and affection of donors, were left without protection. Yet this Court did not hesitate to disregard the whole current of these decisions, and the authority and force of the books, by sanctioning and protecting such trusts as has been done by the well considered opinion in *Smith & Son vs. Towers, Garnishee,* 69 *Md.,* 77.

Can any case be presented appealing more strongly to the careful and independent consideration of this Court, than the one now before it, which seeks to destroy the right of a person to dispose of her property according to her own wishes, and to deprive the persons of her choice of her bounty?

These decisions and the principles on which they stand, harsh and technical in their application, have never been adopted or even sanctioned by this Court, to anything like the extent now sought to make them applicable in this case. The case of *Saylor vs. Plaine, et al.*, 31 *Md.*, 158, depended entirely on the facts of that case, and a very slight examination of those facts will convince the Court how greatly they fall short of the effect now sought to be given to them. In that case the testator had given his entire estate to his wife to be wholly hers during her widowhood, with full power to use and dispose of it, and what should remain, if any, at the termination of her estate, he devised to four persons, to be disposed of according to the *verbal directions of those four or either of them.*

He thus divested himself not only of the entire estate, but left the disposal of whatever should come to the four, to be disposed of by their verbal directions, or by either one of them. No power, therefore, remained to the testator to declare or designate any trust, under which this residue was to be disposed of or enjoyed, and yet by a paper-writing found among his papers, the testator undertook to give directions how the four were to dispose of the property they might receive.

This in no sense could be considered as any declaration of a trust, for it was attempted to be made by a person having no other or greater power over the estate than an entire stranger. It was an attempt to direct the disposal *extra vires,* and was entitled to receive no respect from the Court.

Chase and Postell, *et al. vs.* Stockett and Ridout, Ex'rs, *et al.*

A very mild approval of the principles enunciated by English decisions would have been sufficient to have excluded this declaration or direction on the part of the testator. In fact, to have disposed of it as the Court did, required no such reference, for there was no declaration or direction from one having the right or power, and thus there was an *absolute want or failure of any declaration* of the trust. Confining that case to the special facts, as it is proper to do, it will be seen that it gives no precedent to bind this Court, to the extent claimed for it, by the learned Judge who decided this case below.

The case in 31 *Md.*, 158, is the only instance where this question has been brought before this Court, and the reference made to it in the case of *Maught, &c. vs. Getzendanner*, 65 *Md.*, 527, was upon a different point entirely, and furnished no approval of *Saylor vs. Plaine, et al.*, on the question now submitted to this Court.

PER CURIAM.—We all agree that the decree in this case must be affirmed. The questions are fully considered and the authorities fully reviewed by the learned Judge in the opinion filed in the Court below. And we shall affirm the decree for the reasons stated, and upon the authorities relied on by the Judge below. What we have said will dispose of all the appeals taken from the same decree. The costs in both Courts will be paid out of the estate in the hands of the executors.

*Decree affirmed, and*
*cause remanded.*