SECOND NATIONAL BANK ET AL., EXECUTORS *v.*
SECOND NATIONAL BANK ET AL., TRUSTEES, ET AL.
[No. 85, October Term, 1936.]

548

*Decided February 10th, 1937.*

The cause was argued before OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*T. Howard Duckett* and *Edward F. Colladay*, with whom were *Stephen F. Colladay* and *David C. Colladay* on the brief, for the executors, appellants.

*H. L. McCormick*, with whom were *Louis B. Arnold* and *Mabel Benson Sakis* on the brief, for Percy L. Howe and others, appellants.

SLOAN, J., delivered the opinion of the Court.

All parties to this case, except the trustees, appealed from the decree construing a will which undertook to provide for the establishment and maintenance of a charitable institution in Prince George's County. Dr. Orwin E. Howe, a resident of Washington, D. C., died November 6th, 1935, leaving a will executed August 15th, 1924, by which he appointed the Second National Bank of Washington, D. C., and his wife, Minta G. Howe, executors, and also appointed them trustees to hold and manage the estate until the expiration of the life estates created by the will, with remainder, after the payment of $5,000 to the Baptist Home for Children of the District of Columbia, to a corporation to be formed to be known as "Dr. O. E. Howe Home for Unfortunate Girls." The estate, according to the bill of complaint, consisted of two farms in Prince George's County, four farms in Worcester County, and several properties in the District of Columbia, assessed in the aggregate at $92,612, and personal property estimated to be worth $175,000.

The executors filed their bill of complaint in Prince George's County, praying the Circuit Court of that county (1) to assume jurisdiction of the trust created

by the will, (2) to declare void or valid the bequest for the purpose of founding the "Dr. O. E. Howe Home for Unfortunate Girls," and to declare how the plaintiffs shall make distribution of the estate, so far as the same may be controlled by the laws of the State of Maryland, and (3) general relief. The defendants named in the bill of complaint are the Second National Bank of Washington, D. C., and Minta G. Howe, trustees, and Percy L. Howe and Charles E. Howe, sons, and Dora Ida Hays, daughter, heirs at law and next of kin of the testator, and *cestuis que trustent* under the will. The trustees each filed a noncommittal answer, but the other defendants assailed the provision for the establishment of the home, and prayed that it be declared void. There was no one in court speaking for the will; it had no friends. Aside from the devise and bequest for the Home, the validity of the will was not questioned. The case was submitted on bill and answers, and, from a decree sustaining the will, the plaintiffs and the sons and daughter of Dr. Howe appeal.

As all with which we are concerned is the item of the will providing for the establishment and conduct of the "Dr. O. E. Howe Home for Unfortunate Girls," it is necessary to quote that item, which is:

"All of the balance of my said estate, including my farm in Prince Georges County, Maryland, on the river front, held in trust as aforesaid, shall be paid over, and delivered to, a corporation to be formed to be known as 'Dr. O. E. Howe Home for Unfortunate Girls.' The incorporators of said corporation, who shall also act as its first Board of Trustees, shall be nine (9) in number, with power in said incorporators and the said Board to increase the number as may be necessary to comply with the existing law. The said original Board and the said Trustees shall be nominated by my wife and children within a period of one (1) year after my death. In the event, during the lifetimes of my wife and/or any of my children, any of such nominees shall die, then my wife and/or my surviving children shall nominate

such other person or persons in place of such deceased nominees, to the end that at the death of the last survivor the said nominees shall consist of nine in number. If, however, there should be a lesser number, by failure to nominate in place of the deceased nominees, then the said persons nominated then living shall name such additional persons to constitute the said nine incorporators and trustees. And the said Board of Trustees, after the formation of said corporation, shall take the legal title to all of my real estate held in trust, as aforesaid, and all of the personal property held in trust, as aforesaid, for the purpose of building on the said farm in Prince Georges County, Maryland, a suitable building as a home for unfortunate girls, to be known as 'Dr. O. E. Howe Home for Unfortunate Girls.' And the amount that may be required for the building and furnishing of said Home shall by said Trustees be paid from the said trust fund received by said corporation, in trust as aforesaid; and the balance of my estate remaining shall be held as an endowment fund, the interest of which shall be used by the said corporation for the maintenance and support of said institution. The term of office of said trustees, and the method of election of trustees from time to time, and the rules and regulations regarding the admission of unfortunate girls, and the maintenance and conduct of said institution, and the full scope and object thereof, shall be formulated, set forth in legal form, and signed, by my said wife and my children and by the Trust Officer of the Second National Bank, who are hereby authorized and empowered to fully execute my desires and wishes in this regard, all of which shall be binding upon the said corporation, and only changed by the unanimous vote of the Board of Trustees."

Mrs. Howe renounced the bequest in trust for her, and elected to take under the law. The distribution to her out of the personal property will be under the law of the District of Columbia, and, out of the real estate, she will take as an heir a one undivided one-third interest in accordance with sections 1, 2, and 3, article 46, and

section 126, article 93, of the Code, unless she elected within six months of her husband's death to take the common law dower. Code, art. 46, sec. 4. A copy of the renunciation or election, as the case may be, is not in the record, so that we cannot say definitely what interest she takes in the real estate of the decedent in this state. The result of the renunciation, however, will be to increase the income of the other life tenants named in the will, and to reduce the corpus of the estate, but will not divert the remainder from its course of distribution. *Johnson v. Stringer*, 158 Md. 315, 148 A. 447; *In re Disston's Estate*, 257 Pa. 537, 101 A. 804.

It is evident that the gift which the testator undertook to make would be void for the uncertainty and indefiniteness of the beneficiaries unless it comes within the scope of the Act of 1888, ch. 249, as amended by the Act of 1924, ch. 335, Code, art. 93, sec. 337 (*Dashiell v. Attorney General*, 5 H. & J. 392; *Id.*, 6 H. & J. 1; *Wilderman v. Mayor etc. of Baltimore*, 8 Md. 551; *Needles v. Martin*, 33 Md. 609; *Church Extension v. Smith*, 56 Md. 362, 397; *Isaac v. Emory*, 64 Md. 333, 1 A. 713; *Maught v. Getzendanner*, 65 Md. 527, 5 A. 471), or unless the means provided for the incorporation of the charity comes within the provisions of that act (*Chase v. Stockett*, 72 Md. 235, 19 A. 761; *Yingling v. Miller*, 77 Md. 104, 26 A. 491; *Gray v. Peter Gray Orphans' Home*, 128 Md. 592, 98 A. 202). The statute mentioned, Act of 1924, ch. 335, is: "No devise or bequest of real or personal property for any charitable uses shall be deemed or held to be void by reason of any uncertainty with respect to the donees thereof, provided the will or codicil making the same shall also contain directions for the formation of a corporation to take the same, and within the period of twelve calendar months from the grant of probate of such will or codicil, if the devise or bequest is immediate and not subject to a life estate or at any time between the date of probate of the will or codicil and the end of the twelve months next following the expiration of the life estate or life estates, if the devise or bequest is to

take effect in possession after the expiration of a life estate or life estates, a corporation shall be formed in correspondence with such directions, capable and willing to receive and administer such devise or bequest."

The matter of compliance with the provisions of this statute in the plan of the will for the formation of a corporation to take title to the corpus of the trust estate at the expiration of the life tenancies is necessarily important in the decision of this case. In this connection the chief reliance of all parties is the case of *Yingling v. Miller,* 77 Md. 104, 105, 26 A. 491, 492. In that case, Henry Tasto had devised to his daughter, Margaret Yingling, a farm for life, "upon the condition that she pay to the trustees (or church council) of the Emmanuel Lutheran Church in Manchester, Carroll County, the sum of three hundred dollars, * * * in trust for the express use and benefit of the needy poor of said church or congregation." What this court there in effect said was that, while the Act of 1888, ch. 249, removed the obstacle of uncertainty in the donees, the gift was void because the conditions of the proviso had not been complied with in that case, in that no provision had been made by the testator for payment to a corporation to be formed in accordance with the act, as had been substantially done in the case of *Chase v. Stockett,* 72 Md. 235, 19 A. 761, which is the only theory on which the two cases can be reconciled. In *Dashiell v. Attorney General,* 5 H. & J. 392, it was held that the Statute of 43 Eliz. c. 4, known generally as the "Statute of Charitable Uses" was not in force in this state, and the decisions so continued until the Act of 1888, ch. 249, was passed, whereby it was provided that no devise or bequest of real or personal property for any charitable use should be void for "uncertainty with respect to the donees thereof," if the will or codicil provided for the formation within twelve months of probate of a "corporation * * * capable and willing to receive and administer such devise or bequest."

The first case that came to this court after the Act of 1888 became effective was *Chase v. Stockett,* 72 Md. 235,

19 A. 761, 762, in which the opinion of Judge Miller in the circuit was adopted by this court as its opinion on appeal. Hester Ann Ridout had, by her will made May 24th, 1886, two years before the Act of 1888, probated December 13th, 1888, eight months after the passage of the act, provided for the establishment of "a home for destitute, aged, and infirm women, where they may find a retreat from the vicissitudes of life," and left to eight named persons as trustees what is known as the "Chase Home," at Annapolis, where she resided, and devised to the same trustees certain real estate in Baltimore to be held by them "as an endowment or fund" for the support of the home. At this point in the opinion, Judge Miller said, "But for the recent action of the legislature, I should be compelled to declare this devise for the establishment of a most admirable charity invalid, by reason of the uncertainty as to the beneficiaries entitled to enjoy it. According to a long line of decisions by the court of appeals, a devise for the benefit of 'destitute, aged, and infirm women' is void for uncertainty."

With respect to the powers and authority of the trustees, the testatrix said: "And I hereby will and direct, and fully authorize and empower, the said trustees, if in their judgment they may think best, to become a body corporate, either under a special charter from the legislature of this state, or under the general incorporation laws of this state, and whether as trustees under this will or by incorporation, to make, ordain, and declare whatever rules, regulations, ordinances, or by-laws as they may deem best for the better government and advancement of the home: provided, always, that nothing in such charter or incorporation, rules, or by-laws, shall conflict with the provisions of such trust as declared by this will," of which Judge Miller said, "This, as it seems to me, is a substantial, if not a literal, compliance with the conditions of the statute," and this court so decided. If this court had held the devise to have been to the trustees, it would have been held void as a perpetuity, as well as indefinite as to donees.

Then the case of *Yingling v. Miller*, 77 Md. 104, 26 A. 491, 492, came here, and this court declared "there was no intention to abolish, unconditionally and absolutely, the old rule in Maryland as to uncertainty," and held that, although there was an incorporated church already in existence, it could not take the gift, because the testator had not provided for a new corporation to be formed within a year of the probate of his will to take a fund of $300, and disburse it in accordance with the terms of the will. Thirty-one years after the decision of the *Yingling* case the Legislature amended the Act of 1888, by inserting the words: "If the devise * * * is immediate and not subject to a life estate or at any time between the date of probate of the will or codicil and the end of the twelve months next following the expiration of the life estate or life estates, if the devise or bequest is to take effect in possession after the expiration of a life estate or life estates, a corporation shall be formed," etc., as in the Act of 1888, an amendment designed to meet a situation such as we have here, where the possession would be delayed pending the termination of four life estates.

In many cases, this court had, whenever the language of wills permitted, construed trusts to a charitable corporation to be outright gifts, so long as the purpose of the devise or bequest was within the corporate power of the donee, and had thus avoided the application of the rule against perpetuities. See *Brandt, Inc., v. Y. W. C. A.*, 169 Md. 607, 182 A. 452. In many other cases, as hereinbefore noted, it had declared many gifts to charitable uses to be invalid on account of the indefiniteness of the donees, because the Statute of 43 Elizabeth, ch. 4, was not in force in this state. The first effort to curb the tendency of these decisions was the Act of 1888, ch. 249, and the same as amended by the Act of 1924, ch. 335. It was not until the Act of 1931, ch. 453, section 268A, article 16 of the Code (Supp. 1935), that any doubts as to whether gifts were in trust or went directly to the donees, and the definiteness of donees, were finally

removed, when the Legislature said: "Courts of equity within this State shall have full jurisdiction to enforce trusts for charitable purposes, upon suit of the State by the Attorney General or upon the suit of any person or persons having an interest in the enforcement thereof; and as to all trusts hereafter created for charitable purposes, whether by gift, deed, will or other form of settlement, and whether the subject thereof be real or personal property, it shall be no objection to the validity * * * of such trusts or of such gift, deed, bequest, devise, etc., that the beneficiaries of such trust, constitute an indefinite class or that such trusts or the limitations under such settlement are limited to extend for a perpetual or indefinite period. 'Charitable purposes' under this section shall include all such purposes as are within either the spirit or letter of the Statute of 43 Elizabeth Ch. 4 (1601), commonly known as the statute of charitable uses." If this statute has any effect at all, it is to declare that thenceforward in this state the Statute of 43 Elizabeth, ch. 4, does apply to gifts and trusts for charitable purposes, in the preamble of which the objects to be served are enumerated as follows: The relief of aged, impotent, and poor people; the maintenance of sick and maimed soldiers and mariners, schools of learning, free schools, and scholars in universities; the repair of bridges, ports, havens, causeways, churches, sea-banks, and highways; the education and preferment of orphans; the relief, stock, or maintenance for houses of correction; the marriages of poor maids; the supportation, aid, and help of young tradesmen, handicraftsmen, and persons decayed; the relief or redemption of prisoners or captives; the aid or ease of any poor inhabitants concerning payments of fifteens, setting out of soldiers, and other taxes. This statute did not mark the beginning of charitable uses, as courts of equity had, before it was enacted, assumed jurisdiction of charitable trusts. It made legal and enforceable trusts and gifts which had been declared invalid because indefinite and general. *Vidal v. Philadelphia,* 2 How. 127, 196, 11 L. Ed. 205,

233. The courts, in states where the statute had been adopted, did not confine themselves to the charities expressly named, and many objects have been upheld as charities, which the statute neither mentions nor distinctly refers to. Thus a gift "to the poor" generally, or to the poor of a particular town, parish, age, sex, race, or condition, or to poor emigrants, though not falling within any of the descriptions of poor in the statute, is a good charitable gift. *Jackson v. Phillips,* 14 Allen (Mass.) 539, 551; *Buchanan v. Kennard,* 234 Mo. 117, 136 S. W. 415; 37, 11 *C. J.* 314.

In the instant case, the testator provided for the establishment on his farm in Prince George's County of a home for unfortunate girls, to be known as "Dr. O. E. Howe Home for Unfortunate Girls," and undertook to provide for a corporation to hold the property and a board of trustees to manage it, with power and authority to adopt "rules and regulations regarding the admission of unfortunate girls, and the maintenance and conduct of said institution."

The contention is made that the designation "unfortunate girls" is so incapable of definition that no court could, with any degree of certainty, determine the girls who would be entitled to admission to the Home. It must be agreed that the word is broad in its meaning, and the lexicographers give no help; about all any of them say is that it means not fortunate." Better than the dictionaries is the text in 11 *C. J.* 315, where it is said: "A gift for the relief or amelioration of the condition of the poor, or the aged, homeless, sick, and afflicted, or other persons in unfortunate circumstances, is one for a charitable purpose." It might take in all those who tried and failed or who never had a chance in this world. The founder was a physician, and the meaning here might be such as he, from his professional experience, would give it, and that meaning would not be those who are pecuniarily unfortunate, but girls who have fallen by the wayside (*Mahony v. Duggan,* L. R. Ir. XI, 260), and would be given a chance to hide away from the gaze of

an uncharitable world. Such an institution would be closely akin in its object to the St. Vincent de Paul and Florence Crittenden Homes, and no court would have the temerity to condemn either of them. It might take in any who are homeless or helpless, and aim to repair the wrecks and restore them to lives of usefulness, or at least provide a home. It has never been held that charities be condemned unless they are able to take in the lame, the halt, and the blind from everywhere, but they can be and are upheld as charities if the object be for a purpose commonly understood as charitable, and that then the recipients shall be such persons within the range of their activities as the charities may be financially able to admit, and under such rules and regulations as may effectuate their purposes. 11 *C. J.* 313. Something must be left to the discretion of the managers of such a charity.

This charity is no more indefinite in the statement of its purpose, nor its machinery much more complicated, than that of Mrs. Ridout in *Chase v. Stockett*, 72 Md. 235, 19 A. 761, 762. Her will provided for the establishment of "a home for destitute, aged, and infirm women, where they may find a retreat from the vicissitudes of life, and to endow the same, as far as my means will allow," and authorized those to whom she devised her estate "whether as trustees under this will or by incorporation, to make, ordain, and declare whatever rules, regulations, ordinances, or by-laws as they may deem best for the better government and advancement of the home." There is no substantial difference between the plans of the Ridout will and of the Howe will, unless the complications of the Howe will which have a similar end in view are too involved to be workable, but "courts are not, or ought not to be, astute in searching for a construction which nullifies a will, if there are other reasonable interpretations which uphold it." *Bennett v. Baltimore Humane Imp. Soc.*, 91 Md. 10, 18, 45 A. 888, 889; *Gray v. Peter Gray Orphans' Home*, 128 Md. 592, 603, 98 A. 202.

The sons and daughter of the testator in their answer

said, "The testator did not intend to disinherit his heirs at law and next of kin as to the 'balance' of his estate (after the bequest of $5000 out of the corpus of the estate to the Baptist Home for Children, which they do not dispute), but on the contrary the testator intended that the said 'Balance' should pass to and become vested in his heirs at law and next of kin." If the testator did not intend to divert his estate, after the death of the last survivor of his wife and children, he took a circuitous route and round-about way to express such an intention. Nothing could be clearer than his expressed intention to direct his trustees to pay over the income to his wife and children, down to the last survivor of them, and that then so much of the corpus as necessary for buildings should be used, and the balance go as an endowment for the support of the Home. If their answer means anything, it is that the founding of the Home is a gesture, expressing the benevolent intentions of the pretending donor, with the right of veto in his wife and children. If he had any such idea in his mind in August, 1924, and continuously down to the 6th day of November, 1935, it is rather odd that he made no disposition of the corpus of his estate contingent on the failure of his charitable project, or that the life estates might then determine. The statement was made at the argument of this appeal that the estate was actually worth $400,000 or more, so that the income during the lives of the *cestuis que trustent* and the last survivor of them, if the fund be prudently invested, would be very substantial. No contention is made that the destruction of the Home would accelerate the payment of the corpus to the children.

Assuming then that the object sought to be attained by the testator is not unlawful, as we hold, has he adopted a course substantially in accordance with the provisions of section 337, article 93, of the Code, to effectuate his purpose?

This will was written in August, 1924, by the then trust officer of the Second National Bank of Washington, named as an executor and a trustee, evidently with the

idea that the Act of 1888, ch. 249, was still in force, and without the knowledge that it had been amended by the Act of 1924, ch. 335, by an act which took effect two and a half months before. Under the original Act of 1888 it was necessary for a testator in his will to give directions for the formation of a corporation to take the property devised and bequeathed and within a year of probate of the will for the corporation to be formed, even though the property might not vest in possession for years. This is the situation which the draftsman of Dr. Howe's will thought confronted him when it was written, and he outlined a complicated plan for the formation of a corporation which, in the natural course of events, would not function until the expiration of four life estates. To avoid the necessity of forming and keeping alive a corporation to receive a devise or bequest years afterwards, as would be the case here, the Act of 1924 amended the Act of 1888, so as to allow the corporation to be formed within a year after the expiration of a life estate or life estates, in which the remainder would be to a charitable corporation to be formed to take the corpus, and in the decree appealed from the chancellor held the devise and bequest in remainder to a corporation to be formed, to be known as "Dr. O. E. Howe Home for Unfortunate Girls," to be a valid devise and bequest; provided a corporation be formed in correspondence with the directions of the will within twelve months of the termination of the life estate. But the life tenants contend that the directions of the will cannot be made effective unless and until they perform the duties required of them in the designation of the nine trustees who are to be organized into a corporation, nor unless they sign the by-laws, rules, regulations, etc., for the government of the institution, and they cite *Gambell v. Trippe*, 75 Md. 252, 23 A. 461, to support the contention that the duties delegated to them and the trust officer of the Second National Bank are personal and cannot be delegated or performed by any other persons. We fail to see the application. In that case Emma Spence had directed the

trustees under the will, Jesse K. Hines and James A. L. McClure, to pay over the whole residue and remainder of her estate "to some Presbyterian institution in Baltimore, as they may determine, for charitable or religious purposes." Mr. Hines died a few days after the testatrix, and Mr. McClure qualified and died without stating an account, and without having made the designation. The residue was claimed by the testatrix' next of kin, and it was held that even if the gift had been valid, which it was held not to be, the power in the trustees was personal, and for the failure to exercise it the legacy lapsed. In the opinion in that case, however, this contention of the *cestuis que trustent* is answered by the following quotation from *Barnum v. Mayor etc. of Baltimore*, 62 Md. 275, 292: "If there be parties capable of taking the subject-matter of the trust, and objects legal and definite [corrected by statute, *supra*], to be subserved or benefited by its execution, so that a Court of Equity may take cognizance of and enforce the trust, these are the essentials, and only essentials, to the validity of the trust, though the object of the trust be in its nature charitable." The statute in force when the testator died, Act of 1924, ch. 335, allows the formation of such a corporation as the will proposes at any time within one year after the termination of the last life estate, and while they live there is yet time for the life tenants to observe their father's wishes. If they do not, there is power inherent in the court of equity having jurisdiction to appoint the trustees, who would also be incorporators, for equity will not allow a trust to fail for want of a trustee, and this is the effect of the chancellor's decree.

*Decree affirmed, the costs to be paid out of the estate.*